# Keith *v.* The State.

# Rion *v.* The State.

*Indictment for Selling Liquor without License.*

1. *Sale of imported liquors, in original packages.*—Under the decision of the Supreme Court of the United States in *Leisy v. Hardin* (135 U. S. 100), which is conclusive on this court, a conviction can not be had for selling liquor without a license, or in violation of a local prohibitory law, when the evidence shows that the liquor was imported into Alabama from Georgia or Tennessee, and was sold by the defendant, as the agent of the importer, in the original packages in which it was shipped.

2. *Same.*—When a large quantity of whiskey is forwarded by railroad, by a liquor-dealer in Georgia or Tennessee, to his agent in Alabama for sale, put up in bottles containing each a quart, pint, or half-pint, each wrapped in a separate paper, marked with the kind and quantity of liquor contained therein, and labelled "original package;" if the bottles are packed in a box, which is marked with the number of bottles and quantity of liquor, the original package is the box, whether covered or uncovered, and not the separate bottles; but, if the bottles, so marked, labelled and wrapped, are delivered to the carrier for transportation, and some of them are by him placed in an open box for convenience, while others are placed loosely on the floor of the car, each bottle is an original package.

3. *Same; burden of proof.*—If the shipment is mixed, some of the bottles being packed in a box, and others delivered separate and loose as original packages, the *onus* is on the defendant to prove that the particular bottle sold by him was one of the latter.

4. *Adjourned term.*—An adjourned term of the Circuit Court is but

Vol. 91.

[Keith v. The State.]

a continuation of the regular term; and though the entry specifies the unfinished business to be then disposed of (Code, § 755), the court has power, when entering on the trial of one of those cases, to amend a former entry of the regular term by correcting a clerical misprision in the name of the foreman of the grand jury.

FROM the Circuit Court of DeKalb.

Tried before the Hon. JOHN B. TALLY.

The defendants in these two cases, Jesse Keith and Frank Rion (or Ryan), were each indicted and convicted of selling whiskey without a license, in violation of a local prohibitory law. Each of the indictments was returned into court on the 5th August, 1890, during a regular term of the court; and on each was indorsed the name of *Jesse Slone*, as foreman of the grand jury. On the 9th day of August, during the same term, the business being unfinished, the court made and entered an order for an adjourned term, to commence on the 27th October, and to continue one week; and specified in the order the business to be disposed of, viz., "all the causes on the criminal docket not disposed of, subsequent to cause No. 285," which included both of these cases. On the trial of Frank Rion, he submitted a motion to quash the indictment, because it purported to be indorsed by *Jesse Slone* as foreman of the grand jury, while the minute-entry of the regular August term showed that *Wm. H. Stone* was appointed foreman; and he produced the record, which showed the fact. Thereupon, the court, *ex mero motu*, examined the records and papers showing the summoning and organizing of the juries at the regular term, and, ascertaining that *Jesse Slone* was regularly drawn and summoned as a grand juror, and was appointed foreman of the grand jury, and that the name of *Wm. H. Stone*, a petit juror, was inserted in the minute-entry by mistake of the clerk, corrected the minutes *nunc pro tunc*, and then overruled the defendant's motion; to which rulings exceptions were duly reserved by the defendant. On the trial of Jesse Keith, he raised the same objection by motion in arrest of judgment, and excepted to the overruling of his motion.

In each case, the State proved the sale by the defendant of a half-pint of whiskey; and the defense in each case was, that the liquor was imported into this State, and was sold by the defendant, as agent of the importer, in the original package in which it was received. Keith acted as the agent of Hardy Hall, who was a retail liquor dealer at Rising Fawn, Georgia, and who forwarded a consignment of liquors, by railroad, from that place to Fort Payne, Alabama, for sale by the defendant as his agent. Hall testified on the trial, as a witness for the defense, "that he shipped the liquor, some by freight, and some

by express, consigned to himself at Fort Payne, sometimes on orders from the defendant as his agent, and sometimes without any order; that the goods were delivered at the depot, sometimes put alongside of the track, and sometimes placed loose on the floor of the car; that sometimes the packages were placed loosely in an open box, 18 inches by two feet, and 14 inches deep, and sometimes the bottles were laid loose on the floor of the car, each wrapped in a paper bag, marked and labelled." The defendant himself testified, that he sold the bottles separately, in the condition in which he received them, without removing the paper bag or wrapping, and without disturbing the marks or label. "The court charged the jury, *ex mero motu*, as follows: The facts which make out this case on [are?] the sale of the whiskey in this county, and within twelve months before the finding of this indictment;" and "that the defendant would not be protected, if the jury believe that the whiskey was shipped in open boxes, although the bottles may have been wrapped separately in paper bags, and placed in said boxes." The defendant excepted to each of these charges as given, and also to the refusal of the following charges, which were asked by him in writing: (1.) "If the jury believe all the evidence, their verdict must be for the defendant." (2.) "If the jury have a reasonable doubt as to what form the bottle was shipped in, their verdict must be for the defendant."

Frank Rion was the agent of B. L. Lowenthall & Sons, wholesale and retail liquor dealers in Nashville, Tennessee; and he received from them, for sale as their agent, a large consignment of liquors in a sealed car. The bill of lading, which was produced on the trial, described the articles as follows: "One car-load liquors, containing 1075 bottles liquor, 25 jugs of liquor, whiskey boxed, 10 casks containing 1,200 bottles beer, 10 casks containing 720 bottles beer, 3 casks containing 288 bottles ale." The State proved, by one Parrish, that he bought from the defendant, within a month before the indictment was found, a half-pint bottle of whiskey, which was wrapped in a paper bag, and tightly corked, the top of the bag being twisted around the top; but he did not recollect the marks or label on it. The defendant testified in his own behalf, "that the bottles were placed loose in an open box, with hay laid in, and the bottles, wrapped in paper, between; that each bottle was wrapped in paper, and labelled with the name of Lowenthall & Sons; that each box was marked with the number of bottles and quantity and kind of liquor contained;" and that he sold the bottle to Parrish just as he received it, without disturbing the marks or paper. The court charged

[Keith v. The State.]

the jury, at the instance of the State, that they must find the defendant guilty, if they believed the evidence; and refused to charge, at his request, that they must find him not guilty, if they believed the evidence. To the charge given, and to the refusal of the charge asked, the defendant duly excepted.

Jno. H. Disque, for the appellant in each case.—(1.) The local prohibitory law, under which the defendants were convicted, is unconstitutional and void, as far as it applies to the sales shown by the evidence—sales by an agent of an importer resident in another State, in the original package in which the article was imported.—*Leisy v. Hardin*, 135 U. S. 100; *Lyng v. Michigan*, Ib. 161; *Brown v. Maryland*, 12 Wheat. 420; *Bowman v. Railway Co.*, 125 U. S. 507; *In re Beine*, 42 Fed. Rep. 545. (2.) "The general charge, in a criminal case, is always of doubtful propriety; and it should never be given when requested, unless the evidence is conclusive in its character, and leaves no inference of fact to be drawn by the jury from the facts proved."—*Sanders v. State*, 58 Ala. 371; also, *Weil v. State*, 52 Ala. 19; *Perkins v. State*, 50 Ala. 154. (3.) The court had no power, at the adjourned term, to correct or change the minutes or records of the regular term.—*Buchanan v. Thomason*, 70 Ala. 401; 69 Ala. 89; 77 Ala. 1; 79 Ind. 206; 3 Nev. 70; 8 Baxter, Tenn. 381.

Wm. L. Martin, Attorney-General, for the State.—(1.) The conclusiveness of the cases cited for appellants, from the decisions of the Supreme Court of the United States (135 U. S. 100, 161), is admitted; but they do not decide the precise question here presented, which is, what constitutes the "original package" in which the liquors were imported? In *Beine's case*, 42 Fed. Rep. 545, as the particular statement of facts made by the court shows, "single bottles of beer and whiskey, packed and sealed, or nailed up, in boxes made of paste-board or wood, were shipped and sold in that shape; and the boxes containing one bottle were not packed in any other box, but shipped singly and separately, as so many distinct and separate packages." The inference necessarily follows, that when many bottles are packed together in a box, they lose their identity as original packages, and the box is the original package; and it is immaterial whether the box is covered or uncovered, since the cover only lessens the risks incident to transportation. (2.) Proof of a sale of liquor by the defendant, in less quantity than a quart, within the period covered by the indictment, made out a *prima facie* case for the State;

and if the bottles shipped to Keith, and placed loosely on the floor of the car, are to be considered as the original packages, the *onus* was on him to show that the bottle sold to the witness was one of those so shipped and received.—*Dorman v. State*, 34 Ala. 216, and cases cited on page 249. (3.) An adjourned term is but a prolongation of the regular term, and the court has the same power over its records as during the regular term.— *VanDyke v. State*, 22 Ala. 57; *Hundley v. Younge*, 69 Ala. 89.

CLOPTON J.—These cases, involving the same questions, were submitted and will be considered together.

The appellants were separately indicted and convicted for selling whiskey in DeKalb county, in violation of the provisions of a statute prohibiting the sale, or otherwise disposing of spirituous, vinous or malt liquors, in the county of DeKalb. Acts 1880-1, p. 167. The sale by each of the appellants, within twelve months before the finding of the indictment, is clearly proved. The defense is, that the liquor was imported into this State from another State, and sold by appellants as the agents of the importer, in the original packages in which it was shipped. Before the passage of the late act of Congress, intoxicating liquors could be imported from one State into another, and there sold, without subjecting the seller to the punishment imposed by the State prohibition law, provided the original package was not broken; the Supreme Court of the United States having decided in *Leisy v. Hardin*, 135 U. S. 100, that the right of importation of distilled liquors from one State into another includes the right to sell in the original packages at the place where importation terminates; and that a State statute prohibiting the sale of intoxicating liquors, as applied to a sale by a non-resident importer in the original packages, unbroken and unopened, in which they were brought from another State, in the absence of congressional permission, is repugnant to the clause of the Constitution granting to Congress the power to regulate commerce with foreign nations and among the several States, and is inoperative. The decision being binding on this court, it is our duty to recognize it as authoritative in all cases coming within its scope and purview. According to the principle of the decision, however, the constitutional protection terminates, "when the importer has so acted upon it, that it has become incorporated and mixed up with the general mass of property in the country, which happens when the original package is no longer such in his hands"—when it is opened and broken. When this occurs, the State may interfere to prohibit its sale.

Under the influence of the decision, the question is narrowed by the facts of the present cases to the inquiry, whether the liquor was sold by the appellants in the original packages, unbroken; which involves the further question, what constitutes an original package for importation, in the meaning of the decision?

A succinct statement of the facts in each case, which vary somewhat, is necessary to a proper understanding of the precise question involved. In *Rion's case*, the liquor was shipped by B. L. Lowenthall & Son, wholesale and retail dealers, residing and doing business in Nashville, Tennessee, in half-pint, pint, and quart bottles. The bottles were separately wrapped in tissue paper, each labelled "original package," with the name of the importer, and shipped in an open box, with hay laid between them, each box marked with the number of bottles, and their sizes, contained therein. From the bill of lading put in evidence, it appears that the boxes contained ten hundred and seventy-five bottles, and twenty-five jugs of liquor, and that shipped at the same time were twenty casks containing bottles of beer, and three casks containing bottles of ale; this was done to facilitate the shipment. Rion sold the whiskey as the agent of the importer, by the single bottle, wrapped and labelled in the manner stated.

On these facts, the question arises, whether the bottles having been placed and shipped in an open box, each bottle, or the box containing them, constituted the original package. The small size of the packages, if the bottles be otherwise considered original packages, should have no bearing upon the answer to this question. As said *In re Beine*, 42 Fed. Rep. 545, the importer may determine, in the absence of a regulation by Congress, the form and size of the packages he puts up for export. We do not controvert the proposition, that under the decision of the Supreme Court, intoxicating liquors may be shipped in single bottles, as distinct and separate packages, and that the importer, in such case, has the right to sell a single bottle as in the original package. Conceding this, was the liquor sold by Rion so shipped? *In re Beine*, *supra*, sheds no light upon this question. In that case, single bottles of beer and whiskey, packed and sealed, or nailed up in boxes of paste-board or wood, were shipped and sold in that shape. The boxes containing one bottle were not packed in any other box. In this case, the bottles, separately wrapped in paper, were shipped in a box, and sold singly. Merely labelling each bottle "original package," did not make it one, if it was not really an original package. The term *to pack*, in its ordinary signification, especially when used in reference

to carriage, means to place together and prepare for transportation, as to make up a bundle or bale; and *package* is a bundle or bale made up for transportation. It may consist of a single article; but, when separate articles are placed together, and prepared for transportation in a bundle, or bale, or box, or other receptacle, they do not form as many separate and distinct packages as there are articles, though they may be wrapped separately. The case, or box, or bale, in which separate articles are placed together for transportation, constitutes the original package in the commercial sense. It appears from the bill of lading, that the transportation was not of the bottles as distinct and separate packages, but of a specified number of bottles of liquor contained in boxes, each box indicating by mark thereon the number and sizes of the bottles contained therein. Had the boxes been covered and nailed, or otherwise secured, it would not have admitted of serious question, that they formed the original packages. The purpose of securing a box with a fastened cover is the protection of its contents against loss by theft or otherwise, and for convenience for handling. A distinction between a box securely covered and one uncovered, in respect to its character and *status* as an original package, is a distinction without a difference, unsupported by principle or reason. The mode of shipment adopted was manifestly a mere contrivance to evade the consequences of a violation of the State prohibition law, under the pretext of inter-state commerce, which does not entitle appellant to the protection afforded by the Federal Constitution to importers and sellers of original packages. The evidence in *Rion's case* fails to show an importation and sale coming within the principle decided in *Leisy v. Hardin, supra.*

On account of the paucity of facts, we have had more difficulty in reaching a satisfactory conclusion on *Keith's appeal.* In reference to the mode of shipment shown by the bill of exceptions, the facts are: The liquor was shipped by a retail liquor dealer, engaged in business and residing in Rising Fawn, Georgia, in bottles (sizes not stated) securely corked and wrapped separately in paper bags, each marked with the kind of liquor and the name of the shipper, and consigned to him at Fort Payne, Alabama. The bottles were sometimes placed, for the purpose of transportation, loosely on the floor of the cars, and sometimes loosely in an open box, which was fastened in some manner. The agent of the railroad company at Fort Payne counted the bottles, and checked them out to the defendant, who carried them to his store, and put them on shelves, where there was no other kind of goods. They were sold singly by defendant, as the agent of the importer, wrapped as

described, paper bag unbroken, and label undisturbed. It is not shown by whom the boxes were furnished, whether by the carrier or the shipper, or how fastened, whether to the car, or in some other manner so as to prevent breakage. These are material and controlling facts. If the boxes were furnished by the importer, and the bottles placed therein for transportation, then, what constituted the original package would be determined on the principle stated above in *Rion's case*. But, if furnished by the carrier, and fastened to the car, so as to virtually become a part thereof, and the bottles placed therein by the carrier's agent, or by his direction, for safe and more convenient transportation, the bottles wrapped separately in paper bags, marked and directed as stated, would form as many distinct and separate packages. Also, the bottles laid loosely on the floor of the car should be so regarded.

The State having shown a *prima facie* case, in order to defeat the State law, the burden and duty were on appellant to prove the facts which rendered it inoperative, and which bring the sale within the protection given to importers and vendors of original packages by the commercial clause of the constitution. The State is not required to negative in the indictment that the sale was of liquor in the original package in which it was imported from another State.—*Dorman v. State*, 34 Ala. 216; *State v. Robinson*, 39 Me. 150; *State v. Gurney*, 34 Me. 149; *Cleveland v. State*, 86 Ala. 1. This is matter of defense, to be brought forward by plea or evidence. Also, by this rule, if conceded that the bottles placed on the floor of the car were each an original package, and it should be found that the box. as to those placed therein, was the original package; then it would be incumbent on appellant to show that the liquor sold by him was one of the bottles placed on the floor of the car.

The *onus* being on appellant to show an importation and sale as to which the State statute is inoperative, we can not say that the court erred in instructing the jury, that appellant would not be protected if the liquor was shipped separately in paper bags and placed therein; or in refusing to charge, as asked by appellant, if the jury have a reasonable doubt as to the form in which the bottle sold was shipped, their verdict must be for defendant. The phrase in the charge given, *was shipped in open boxes*, imports that they were shipped by the shipper. The importer ships, the carrier transports. If appellant apprehended that the tendency of the charge was to mislead the jury, this could and should have been avoided by a qualifying or explanatory charge.

Section 750 of the Code provides, that whenever, at any regular term of a Circuit Court, there shall be a failure to dis-

pose of all the business, the presiding judge shall adjourn the court until such time as he can return and complete the business, unless in his opinion the public good does not require it; and in the entry of adjournment, the order in which the unfinished business will be transacted may be prescribed. By an order made August 9, 1890, at the regular term, the presiding judge adjourned the court until the succeeding October, and prescribed that the unfinished business will be transacted in the order in which the cases stood on the criminal trial docket, following a stated number, including the cases of appellants. The amendment of the minutes in respect to the organization of the grand jury who found the indictments, pertained to the trial of those cases. An adjourned term is but a prolongation of the previous term, and the court, during such adjourned term, had the same power to make the record of the term, of which it is a continuation, to conform to the truth, as it had during such previous term; the power remains until the term is brought to a final close.— *Vandyke v. State*, 22 Ala. 57.

Affirmed.