# Barron *v.* Barron.

*Common Law Action of Ejectment.*

1. *Motion for new trial suspends judgment.*—A motion for a new trial, seasonably made, suspends judgment in the case, and such judgment does not become final for the purpose of an appeal until said motion for a new trial is disposed of.

2. *Same; effect on motion at adjourned term.*—Where a motion

[Barron v. Barron.]

for a new trial is made at the regular term of the court at which judgment was rendered in the case, but was not disposed of until at an adjourned term to which all unfinished business, including said motion, was continued, the court has the authority, after passing upon said motion for a new trial at such adjourned term, to fix the time within which the bill of exceptions, both in the case in chief and on the motion for a new trial, shall be signed in vacation; and a bill of exceptions filed within the time so allowed is seasonably filed and should not be stricken from the record; and this is true, although the time fixed by agreement at the regular term for the signing of the bill of exceptions in the case in chief had expired.

3.  *Action of ejectment; plea in abatement; when right to maintain present suit not affected by costs in prior suit not being paid.*—In an action of ejectment, a plea in abatement which sets up that in a former suit in ejectment for the lands in controversy against the party through whom the present plaintiff claims title; the costs in said former suit had been adjudged against said party and had not been paid, is insufficient to cause an abatement of the pending suit, when it appears that the present plaintiff was in no wise connected with the former suit, nor was the title relied on by him derived from the defendant in the former suit after the pendency of said suit; and such plea should, on proper motion, be stricken from the file.

4.  *Same; admissibility of certificate of redemption from tax sale as color of title to define boundary of possession.*—In an action of ejectment where the plaintiff claims under adverse possession, a certificate of redemption of land from a tax sale, reciting the assessments, sale, &c., and purporting to vest title in the purchaser, through whom the plaintiff claims, as one authorized to redeem, although not admissible as a muniment of title, is admissible in evidence as color of title to define the boundaries of the purchaser's actual possession.

5.  *Same; adverse possession; admissibility of evidence.*—In action of ejectment, where the plaintiff claims title by adverse possession, it is permissible to ask the witness if he did not buy a certain portion of land involved in the suit from the plaintiff's grantor; the testimony sought by such question being relevant as tending to show the nature and character of the possession of plaintiff's grantor.

6.  *Evidence; general objection properly overruled.*—A general objection to evidence, which fails to state the grounds on which it is based, is properly overruled.

[Barron v. Barron.]

7. *Ejectment; adverse possession; admissibility in evidence of proceedings in unlawful detainer suit.*—In an action of ejectment, where the plaintiff claims title under adverse possession, and the defendant has introduced evidence to show that the adverse possession of plaintiff's grantor was interrupted by third parties entering upon said lands, it is permissible for the plaintiff to introduce in rebuttal the records and proceedings in an action of unlawful detainer, brought by him against such third parties, in which suit plaintiff was successful and said third parties were ousted.

8. *Same; same; admissibility of record of former ejectment suit.*— In such an action the record of· an ejectment suit against one of the parties through whom the plaintiff claims title by adverse possession, and in which a voluntary non-suit was taken, is admissible in evidence.

9. *Same; evidence; sufficiency of description included in mortgage.*—The description of land conveyed in a mortgage, as "the east half of the southeast fourth of section thirteen, township thirteen, range four, east," without giving the state and county, or reciting whether east of the St. Stephen's or Huntsville meridian, although insufficient by reason of its indefiniteness, rendering the mortgage inadmissible in evidence, still it is competent to identify the lands intended to be conveyed by parol evidence; and when the deficiency in the description is thus supplied, the mortgage, in connection with the parol testimony, is admissible in evidence.

10. *Same; same; insufficient objection; presumption on appeal.*—In an action of ejectment where the defendant objects to the introduction in evidence of a mortgage, because of the defective description of the land, but the objection does not specify the defect claimed, and the bill of exceptions recites that the plaintiff offered a writing purporting to be a mortgage of the land in controversy, it will be presumed on appeal, in support of the trial court's ruling in admitting the mortgage in evidence, that it was understood by the parties that the lands conveyed in the mortgage were the same as those sued for.

11. *Landlord and tenant; adverse possession; when claim of tenant's wife does not break continuity of possession.*—Where, after a tenant goes into possession of lands under a lease, his wife, while occupying them with him sets up a claim to said lands, and subsequently thereto the tenant himself repudiated the relation of landlord and tenant, if upon ascertaining the claim of his tenant and his wife the landlord prosecutes to a successful termination a suit of unlawful detainer and dispossesses the tenant and his wife of said premises, their claim and possession do not

[Barron v. Barron.]

break the continuity of the holding of the landlord, or in any way affect the adverse character of his possesion.

12. *Ejectment; purchase subsequent to acquirement of title by plaintiff does not affect his right of recovery.*—Where, in an action of ejectment, the uncontradicted evidence shows that a part of the land sued for was claimed by the defendants under a sheriff's deed by virtue of a judicial sale of said part as the property of the plaintiff's grantor, which sale was made subsequent to the execution of a mortgage of such grantor, through which the plaintiff claimed title, such claim for said part of the property will not defeat the plaintiff's right to recover the same; and a charge is properly given which instructs the jury that if they believe all the evidence their verdict must be for the plaintiff for the part of the property so claimed.

13. *Adverse possession; when commences to run.*—Where the purchaser of land enters immediately into actual adverse possession of the land, claiming it as his own, his adverse possession begins to run from the date of purchase, even though he did not receive a deed from his vendor until several months thereafter.

14. *Same; what is sufficient claim of title to constitute adverse possession.*—An actual claim of title to land by those in open possession is all the law requires as an element of claim of adverse possession, without any reference as to whether or not those in possession think their title good.

15. *Mortgage; assignment does not operate to extinguish mortgage debt.*—An indorsement on a mortgage which recites "for value received and without recourse, I hereby transfer this mortgage and the debt it secures," is a simple assignment of the mortgage and debt, and does not operate to pass the legal title to the land contained in the mortgage; and payments made by the assignee to the assigning mortgagee in purchase of such mortgage, do not operate to extinguish the mortgage debt, and thereby revest the title to the lands in the mortgagor.

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. GEORGE E. BREWER.

This was a common law action of ejectment against the appellants, and was commenced August 28, 1893. There were three demises in the complaint. One was laid in John T. Barron, another in J. W. Moore as the executor of W. G. Moore, deceased, and the other was laid in the heirs at law of W. G. Moore, deceased. There were several parties defendant, but the principal defend-

ants were Rebecca Barron, Mary McFarland, M. M.
Smith and N. A. Hood; the other defendants being
privies of said Rebecca Barron and Mary McFarland,
and holding under and through them. The defendants
disclaimed title to an undivided two-thirds interest in
the lands sued for; and as to the remaining undivided
one-third they pleaded not guilty. The substance of the
plea in abatement, which was stricken from the file on
motion of the plaintiff, is stated in the opinion.

On the trial of the cause the plaintiff introduced evi-
dence tending to establish his title to the property as fol-
lows: One J. S. Clements died in 1870 seized and pos-
sessed of the lands in controversy. He left surviving
him a widow, who, together with his children, continued
to reside upon the property. In 1871 said lands were as-
sessed for taxes as the lands of J. S. Clements, and de-
fault being made in the payment of the taxes for said
year, the lands were sold therefor. Subsequently, Mrs.
Mary Clements, the widow of said J. S. Clements, re-
deemed said lands by paying double the amount paid at
said sale and the costs, &c., as required by the statute.
In September, 1873, the probate judge of the county of
St. Clair, wherein the lands were situate, gave to Mrs.
Mary Clements a certificate of redemption of said lands.
She thereupon went into possession and set up an indi-
vidual claim to said lands. Subsequently, during the
year 1873, she sold said lands to Jesse H. Barron, but
did not execute to him a deed until the year 1879. Im-
mediately upon the purchase of said lands from Mary
Clements, Jesse H. Barron went into possession thereof,
and exercised acts of ownership, claiming the lands as
his own. On January 14, 1884, Jesse H. Barron and his
wife, executed a mortgage upon the lands in controversy
to W. G. Moore, to secure the payment of an indebted-
ness due from him to Moore. In December, 1884, Jesse
H. Barron brought an action of unlawful detainer
against B. B. Barron, the husband of Rebecca Barron,
and Benjamin F. Clements, who was the father of the
defendant, Mary McFarland. B. B. Barron had gone
into possession of a part of the lands as the tenant of
Jesse H. Barron and while so in possession, he and his
wife, Rebecca Barron, set up a claim to said lands. Ben-

jamin F. Clements was in possession of a part of the land, claiming it as his own. In each of the actions of unlawful detainer, the plaintiff recovered judgment against the defendants, respectively, and they were ousted under a writ of restitution issued upon said judgment. The mortgage from Jesse H. Barron to W. G. Moore was by the executor of said W. G. Moore, who had subsequently died, transferred and assigned to the plaintiff, John T. Barron, the transfer being evidenced by the following indorsement upon said mortgage: "For value received and without recourse, I hereby assign and transfer this mortgage and the debt it secures to John T. Barron." This transfer was signed "J. W. Moore, executor of W. G. Moore, deceased." Default having been made in the payment of the mortgage debt, the mortgage was foreclosed under the power of sale, and John T. Barron became the purchaser of the lands in controversy. This sale was made January 16, 1893.

The evidence for the defendants tended to show that the lands in controversy belonged to the first wife of J. S. Clements, deceased, and that they were the heirs at law of J. S. Clements' first wife. It was further shown by the defendants that in 1887 Rebecca Barron and B. F. Clements, whose only heir is the defendant, Mary McFarland, brought an action of ejectment against Jesse H. Barron for the lands in controversy, and that they recovered judgment for an undivided two-thirds interest in said lands with the costs of suit; that the costs of said suit not having been paid, execution was issued on the judgment and levied upon the undivided one-third interest adjudged in said suit to have belonged to Jesse H. Barron. Under this execution the undivided one-third interest was sold and the defendant, N. A. Hood, became the purchaser of said undivided one-third interest. This judgment in the ejectment suit brought by Rebecca Barron and B. F. Clements against Jesse H. Barron was recovered on October 11, 1892, and the sale was made to N. A. Hood on December 12, 1892. It was shown that Rebecca Barron and Mary McFarland, as heir at law of Benj. F. Clements, in December, 1892, executed a deed to the defendant, M. M. Smith, conveying to him an undivided one-third interest in the lands sued for.

Upon the plaintiff offering to introduce in evidence the certificate of redemption of the lands in question, given by the probate judge to Mary Clements in 1873, the defendants objected, upon the grounds that said written instrument was illegal, irrelevant and incompetent evidence, and that the writing itself showed that it was neither title nor color of title to the lands sued for. This objection was overruled, the certificate was allowed to be introduced in evidence, and to this ruling the defendants duly and separately excepted.

One John Thompson, as a witness for the plaintiff, testified that he knew the lands in controversy and had known them since 1870; that J. S. Clements owned said lands and that after his death his widow and children lived on them, and that after 1873 Jesse H. Barron claimed title and ownership to said lands. Plaintiff then asked said witness if he did not buy a portion of said lands from Jesse H. Barron in the year 1879? The defendants objected to this question, upon the ground that it called for illegal, irrelevant and incompetent evidence; the bill of exceptions stating that "No question was raised because the deed was not produced." The court overruled the objection, and the defendants duly and separately excepted. The witness answered that he did not buy any of the lands in controversy, but that he bought from said Jesse H. Barron about two acres of the original Clements' tract.

Upon the examination of one Williams as a witness, he testified upon his cross-examination, that he took a mortgage from Jesse H. Barron on a portion of said land, which he had acquired from Mary Clements, the widow of J. S. Clements, to secure a loan made by him, Williams, to said J. H. Barron. Defendants objected to this testimony and moved to exclude it, on the ground that it was illegal, irrelevant and incompetent. The court overruled each of these objections, and the defendants duly and separately excepted.

The plaintiff offered in evidence the records of an action of ejectment brought by B. F. Clements and Rebecca Barron against Mary Clements, the widow of J. S. Clements, on September 4, 1872, which suit was terminated on October 12, 1874, by the plaintiffs therein volun-

tarily taking a non-suit. The defendants in the present suit objected to the introduction of the record of said former ejectment suit, upon the grounds: 1st. It was illegal, incompetent and irrelevant evidence; 2d, that said records showed on their faces that the parties to said ejectment suit were other and different parties to the parties to this suit; 3d, that the uncontroverted evidence in this case shows that Mary Clements was not in possession of said lands on October 12, 1874, when the non-suit was taken. The court overruled this objection, allowed said evidence to be introduced, and to this ruling the defendants separately excepted.

Upon the plaintiff introducing in evidence the mortgage executed by J. H. Barron to W. G. Moore, the defendants objected and moved to exclude said mortgage, upon the grounds: 1st. That it was illegal, irrelevant and incompetent evidence. 2d. Because the evidence shows that said mortgage debt was fully paid. The court overruled this objection and motion, and to these rulings the defendants duly and separately excepted. Upon the plaintiff offering to introduce in evidence the records of the suits of forcible entry and unlawful detainer instituted by J. H. Barron on December 4, 1884, against B. B. Barron and B. F. Clements, the defendants objected to the introduction of said records in evidence, upon the grounds that they were illegal, irrelevant and incompetent evidence, and that the parties to said suits, as shown by the records, were other and different parties from those in the present suit. The court overruled each of these objections, and to this ruling the defendants separately and severally excepted. The other facts of the case sufficient to an understanding of the rulings on the present appeal, are sufficiently stated in the opinion.

The defendants separately excepted to the following separate portions of the court's general charge to the jury: (1.) "If the jury found from the evidence that B. B. Barron went into possession of said lands in 1881 under a lease or as tenant of his son, Jesse H. Barron, and that Rebecca Barron entered on said lands as his wife, then any claim of the said Rebecca Barron during said tenancy of her husband to the lands, while she lived on them with her said husband, he having entered on

[Barron v. Barron.]

them under a lease from Jesse H. Barron, would not have made a gap or chasm in said Jesse H. Barron's possession while her husband occupied as the tenant of Jesse H. Barron." (2.) "If the jury found from the evidence that B. B. Barron went on the lands sued for in 1881 under a lease or as tenant of Jesse H. Barron, and after going on said lands, he set up a claim to the lands in his own right or in the right of his wife, Rebecca Barron, whilst his tenancy lasted, and that said Jesse H. Barron, on ascertaining that said B. B. Barron was setting up such claim to said lands and property, instituted a suit of unlawful detainer against him and vigorously prosecuted the same, and in such suit recovered possession of said lands, then such possession and claim to the lands by the said B. B. Barron would not make such a gap or chasm in the possession of Jesse H. Barron as would break its continuity, if said Jesse Barron was in the adverse possession of said lands." (3.) "That under the undisputed testimony in the case, the several payments made by John T. Barron to W. G. Moore, and to his executor, J. W. Moore, were not payments on the mortgage debt, but that said payments were made by said John T. Barron as purchaser of said mortgage and mortgage debt.'

The court, at the request of the plaintiff, gave to the jury the following written charges: (1.) "The court charges the jury that if they believe all the evidence in this case, then their verdict must be for the plaintiff for the undivided one-third interest in the lands sued for claimed by Hood.", (2.) "The court charges the jury that if they find from the evidence that Jesse Barron bought the lands in the fall of 1872 from Mrs. Mary Clements and went into actual adverse possession of the land by himself, and by tenant, claiming them as his own from his said purchaser, then his adverse possession would run from that time, although he did not receive his deed from Mrs. Clements till 1873." (3.) "The court charges the jury that it makes no difference when the adverse possession of Mrs. Clements and that of Jesse Barron, respectively, commenced, if the jury find from the evidence that both together held the land adversely for more than ten consecutive years before the

[Barron v. Barron.]

7th day of November, 1887." (4.) "The court charges the jury that if they find from the evidence that Mrs. Barron's going on the lands with her husband, and that her husband went on them under contract with Jesse Barron and Jesse Barron promptly expelled Barnabas B. Barron from the lands when he found out the lands were claimed against him, such going on the lands by Mrs. Barron would not interrupt the statute of limitations, if it had begun to run." (5.) "The court charges the jury that if they believe from the evidence that Mary Clements and Jesse Barron had actual adverse possession of the lands sued for, claiming them as their own, and cultivating them, openly and notoriously for more than ten years before suit was brought for their recovery in November 1887, then their verdict must be for the plaintiffs." (6.) "The court charges the jury that the actual claim of the lands sued for, without any reference to whether or not the claimants thought the title was good, is all the law requires as an element of claim of adverse possession." (7.) "The court charges the jury that if they find from the evidence that Jesse Barron was in the actual adverse possession of the lands, claiming them as his own, for more than ten consecutive years prior to the 7th day of November, 1887, or if they find from the evidence that Mary Clements was in the actual adverse possession of the lands, claiming them as her own, and she sold them to Jesse Barron and turned her possession over to him, and the actual adverse possession of the two when added together cover a period of more than ten consecutive years just prior to the 7th day of November, 1887, then this was sufficient to take the title out of the heirs of James Clements' first wife; and the court further charges the jury that the moving in of third parties on the land would not constitute a break in the adverse holder's possession, if said adverse holder took prompt action in the court to remove them, and did remove them." (8.) "If the jury find from the evidence that Jesse Barron, by himself and tenants, was in the actual adverse possession of the lands sued for, claiming them as his own, for more than ten consecutive years prior to the 7th day of November, 1887, then this was sufficient to divest the title out of the heirs of the first wife

of James Clements, if they ever had title, and invest the title in Jesse Barron." The defendants separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following charges requested by them: (1.) "The court charges the jury that under the evidence in this case, John T. Barron cannot recover in this action." (2.) "If the jury believe the evidence they must return a verdict in favor of defendant for an undivided one-third interest in the lands sued for." (3.) "If the jury believe the evidence in this case they cannot find a verdict in favor of the plaintiff, John T. Barron, as against Rebecca Barron, Mary McFarland and M. M. Smith." (5.) "If the jury believe the evidence in this case they can not find a verdict in favor of J. W. Moore as executor of W. G. Moore under demise laid in him in the complaint as against Rebecca Barron, Mary McFarland and M. M. Smith." (6.) "If the jury believe the evidence they can not find a verdict in favor of the heirs of W. G. Moore, deceased, as named in the complaint, under the demises in the complaint as against Rebecca Barron, Mary McFarland and M. M. Smith." (8.) "If the jury believe all the evidene in this case, they must find for the defendants Rebecca Barron, Mary McFarland and M. M. Smith." (9.) "If the jury believe from the evidence that the legal title to the lands in controversy was in Rebecca Barron, B. F. Clements and Martha Clements in 1881 or in 1882, and that said Rebecca Barron in 1881 or 1882 entered on said lands and continued on them, claiming possession under such title in herself and brother and sister and not as the wife of B. B. Barron, then the jury must find for Rebecca Barron, Mary McFarland and M. M. Smith." (10.) "The court charges the jury that J. W. Moore, as executor of the will of W. G. Moore, deceased, had no authority to sell and transfer the mortgage without an order of the probate court unless the evidence shows that he had power under the will to so sell and transfer, and if they find from the evidence that the Moore heirs or the executor, J. W. Moore, received the amount due on said mortgage, then the same amounted to a payment of the mortgage debt, which divested the title to lands sued for out of the executor W.

G. Moore, deceased, and out of his heirs at law, and they could not recover in this action." (11.) "The court charges the jury that if they find from the evidence that the mortgage debt was paid before the commencement of this suit, then the legal title was divested out of the heirs of W. G. Moore, deceased, and reinvested in Jesse H. Barron to the extent of his interest therein, and there could be no recovery against the defendant Hood." (12.) "If the jury believe from the evidence that there was a transfer of the mortgage by J. W. Moore as the executor of the last will and testament of W. G. Moore, deceased, and on such transfer he received the amount agreed to be paid or the balance due thereon, then such attempted transfer would be a payment of the mortgage, unless the jury further find from the evidence that J. W. Moore had power under the will to sell claims of the estate of W. G. Moore, deceased, and their verdict should be for the defendant Hood, for an undivided one-third interest in the lands sued for.

There were verdict and judgment for the plaintiff. The defendants appeal, and assign as error the rulings of the trial court to which exceptions were reserved.

In this court the appellees spread a motion upon the motion docket to strike from the record in the case the bill of exceptions, because it was not signed by the presiding judge within sixty days from the expiration of the October Term, 1896, of the circuit court of St. Clair county. The facts pertaining to this motion are sufficiently stated in the opinion.

M. M. SMITH and INZER & GREENE, for appellants. The bill of exceptions should be stricken from the record. *Van Dyke v. State,* 22 Ala. 57; *Hundley v. Yonge,* 69 Ala. 89; *Keith v. State,* 91 Ala. 2; *Martin v. State,* 77 Ala. 1.

The appellant's objection to the question propounded to the witness Thompson, asking "If he did not buy a portion of said land from Jesse H. Barron," should have been sustained. Such questions called for evidence which was wholly immaterial, incompetent and was misleading.—*Galbreath v. Cole,* 61 Ala. 139; *Hooper v. Clayton,* 81 Ala. 391; *Bell v. Kendall,* 93 Ala. 489.

The records of the unlawful detainer suits offered in evidence were inadmissible and should have been ex-

cluded.—*Farmer v. Eslava*, 11 Ala. 1029; *Elliott v. Powell*, 10 Watts, 454; *Bradley v. West*, 60 Mo. 42; *Hoopes v. Garver*, 15 Pa. St. 525; *Hole v. Rittenhouse*, 19 Pa. St. 309.

What facts constitute such adverse possession as will disseize or divest the true owner of title, are questions of law, and should be passed by the court, and under the evidence in this case, neither Mary Clements nor Jesse H. Barron ever had any such adverse possession of the lands sued for.—*Davis v. Caldwell*, 107 Ala. 526; *Sample v. Reeder*, 107 Ala. 227; *Ivey v. Beddingfield*, 107 Ala. 616. Under the evidence in this case, Jesse H. Barron never proved such character of adverse holding as, under the law, would disseize the true owners of the land sued for, and invest him with the title.—*Potts v. Coleman*, 67 Ala. 221; *Davis v. Caldwell*, 107 Ala. 526; *Sample v. Reeder*, 107 Ala. 227; *Ivey v. Beddingfield*, 107 Ala. 616.

DORTCH & MARTIN, *contra.*—The court was right in striking plea. The parties to this suit were not same as parties to other ejectment suit. John T. Barron could be in no way bound by judgment in case of suit against Jesse Barron. The basis of plaintiff's claim in this suit is the mortgage given by Jesse Barron to W. G. Moore in 1884. The suit of Rebecca Barron and others against Jesse Barron was not brought till November. 1887. This mortgage, if good at all, is superior to the claim of any person growing out of this subsequent suit of November, 1887.—12 Encyc. of Law, 92, note, p. 93; *Coles v. Allen*, 64 Ala. 98.

DOWDELL, J.—This is a common law action of ejectment. The record shows that the cause was tried at the October term 1896 of the circuit court of St. Clair county. On the 14th day of October, the day of the trial of the cause, a written agreement was entered into by counsel, by which it was agreed that the defendant should have sixty days "from the expiration of this term of the court in which to prepare and have signed a bill of exceptions." On the day following, the 15th, being a day of the term, the defendant put upon the motion docket a motion for a new trial. At a subsequent day,

and being the last day of the term, the court made and
entered upon the record an order, in all respects regu-
lar, for an adjourned term of said court to begin on the
30th day of November following to complete the un-
finished business of the regular term. The motion for a
new trial in this cause was not heard at the regular
term, and was a part of the unfinished business
of that term. On the 4th day of December,
being a day of the adjourned term which began
on Nov. 30th, the motion was heard and by the court
overruled, and at that time the court made an order
granting defendant ninety days to prepare and have
signed a bill of exceptions "in the cause in chief and also
on the motion for a new trial." The bill of exceptions
was signed on the 3d day of February following.

A motion for a new trial seasonably made suspends
the judgment in the cause, and it does not become final
for purposes of an appeal until such motion is disposed
of. "The cause is said to be *in fieri* by reason of the mo-
tion; and the court may make any order afterwards that
may be proper."—*Florence Cotton & Iron Co. v. Field,*
104 Ala. 471; *Pratt v. Keils,* 28 Ala. 396; *Walker v. Hale,*
16 Ala. 27. The adjourned term of a court is but a con-
tinuation of the regular term.—*Keith v. State,* 91 Ala.
2; *Hundley v. Yonge,* 69 Ala. 89; *Van Dyke v. State,* 22
Ala. 57. The court had the right and authority at the
adjourned term to fix the time for the bill of exceptions
to be signed in vacation; the motion for a new trial hav-
ing been made at the regular term and not disposed of
until at the adjourned term. The motion to strike the
bill of exceptions must, therefore, be overruled.

On the trial the defendants filed a plea in abatement,
to the effect that there had been a former trial in eject-
ment as to the land in question in which costs had been
adjudged against Jesse Barron, through whom plaintiff
here claimed title, and that such costs had not been paid.
The plea disclosed that the title relied on here by plain-
tiff was under a mortgage executed by Jesse Barron long
prior to the institution of the suit in which it is alleged
the costs were adjudged that remain unpaid. The pres-
ent plaintiff was in nowise connected with that suit, nor
was the title here relied on by him, derived from Jesse

Barron after the pendency of said suit. The plea in abatement was properly stricken by the court on plaintiff's motion to strike the same.

The plaintiff based his right of recovery of the land on his title under the mortgage executed by Jesse H. Barron to one W. G. Moore, bearing date January 14, 1884, and also upon the adverse possession of said land for ten years by said Jesse H. Barron and his vendor, Mary Clements. Upon the trial the plaintiff introduced evidence which tended to support his theory of the case, showing an adverse possession of the land beginning with Mary Clements about the year 1872 and by Jesse H. Barron who purchased the same from said Mary in 1873, on down to 1887, when the former ejectment suit was begun by Rebecca Barron and Ben F. Clements against said Jesse H. Barron.

The court admitted in evidence against the objection of defendants, a certificate of redemption of the land in question, given by the probate judge of St. Clair county to Mary Clements in 1873, which described the lands according to government survey and numbers. The said certificate recites the assessment of the land to the estate of J. S. Clements, deceased, (the husband of Mary), the sale for the taxes, purchase, etc., and then purports to invest the said Mary with the title, as being a person in interest, and having a right to redeem. The certificate was offered in connection with other evidence tending to show an adverse holding by Mary Clements. As a muniment of title it was inadmissible, but as color of title, to show and define the boundaries of an actual possession it was admissible.—*Doc ex dem. Hooper v. Clayton et al.*, 81 Ala. 391; *Dillingham v. Brown*, 38 Ala. 311.

One of the issues in the case being as to adverse possession of the land, the objection to the question put by plaintiff to the witness Thompson, "If he (witness) did not buy a portion of said land from the said Jesse H. Barron in the year 1879?" was properly overruled by the court; the bill of exceptions reciting that no objection was made for failure to produce the deed. The testimony sought by the question was clearly relevant as tending to show the nature and character of Jesse H. Barron's possession, whether he was claiming the same

as his own.   No greater act of ownership could be exercised over land by a party in possession than that of an absolute disposition of the same by sale.   For like reason the statement by defendants' witness Williams upon his cross-examination by plaintiff, that "he (witness) took a mortgage from said Jesse H. Barron on a portion of said land to secure a loan," was relevant to the issue.   Moreover, the objection to this statement was general, no ground being stated, and was for that reason properly overruled.

The defendants introduced evidence tending to show that the adverse possession of the land by plaintiff's grantor, Jesse H. Barron, had been interrupted and broken by the entry thereon of B. B. Barron and Ben. F. Clements.   This rendered the record in the unlawful detainer suits brought by the said Jesse H. Barron against these parties, and which he prosecuted to a successful issue, putting them off the land, clearly relevant in rebuttal of the theory of the defendants as to a gap or chasm in the continuity of the adverse possession by Jesse H. Barron.

The record of the ejectment suit brought by Ben. F. Clements and Rebecca Barron against Mary Clements in 1872, and in which the plaintiffs took a voluntary nonsuit in 1874, was relevant to the question of adverse possession of the land by Mary Clements, which was one of the issues involved in this case.—*Ponder et al. v. Cheeves et al.*, 104 Ala. 307.

The description of the land in the mortgage of Jesse H. Barron to W. G. Moore, of January 14, 1884, which was offered in evidence by the plaintiff, being as follows: "The east half of the southeast fourth of section thirteen, township thirteen, range four, east," without giving the State and county, or whether east of the St. Stephens or Huntsville meridian, was imperfect and insufficient, and without aid of identification, would have rendered the mortgage inadmissible in evidence.—*Goodwin v. Forman et al.*, 114 Ala. 489.   But it was competent by parol evidence to identify the land and thus supply the deficiency in description in the mortgage.—*Webb v. Elyton Land Co.*, 105 Ala. 471; *DeJarnette v. McDaniel*, 93 Ala. 215; *Meyer Bros. v. Mitchell*, 75 Ala. 475; *Chambers v. Ringstaff*, 69 Ala. 140.

It is insisted by appellants, that the court below erred in not excluding the mortgage, because the record fails to show that there was any proof that the land was situated in St. Clair county. In making their objection in the circuit court the defendants did not point out or specify this defect in description as a ground of objection, and their bill of exceptions recites, "The plaintiffs then offered in evidence in their behalf a paper writing purporting to be a mortgage given by Jesse H. Barron and his wife to W. G. Moore on the 14th day of January, 1884. In and by which said mortgage said Jesse H. Barron and wife mortgaged the lands in controversy to said W. G. Moore," etc. In the absence of a specific objection in the trial court pointing out the defective description in the mortgage, under the above recital in the bill of exceptions we will presume in favor of the ruling of the trial court, that it was understood or agreed by the parties that the land in the mortgage and that in controversy was the same, and thus dispensing with parol proof in order to identify it.

There was evidence going to show that in 1881 B. B. Barron, the husband of Rebecca Barron, was moved upon the land by Jesse H. Barron, as the tenant of said Jesse under a lease contract, and that the said Rebecca went with her husband, the said B. B. Barron, and after thus moving upon the land with her husband, set up a claim to it in her own right, and some time thereafter the said B. B. Barron, also, set up a claim to the land in right of his wife, the said Rebecca, and repudiating the relation of landlord and tenant as between himself and said Jesse, and under which he entered into possession. As soon as this fact came to the knowledge of the said Jesse, he immediately brought his suit of unlawful detainer against the said B. B. and prosecuted the same to a successful termination, dispossessing the said B. B. The said wife Rebecca went away with her husband upon his being put out of possession under said suit. Under this state of the evidence, there was no error in that portion of the court's oral charge relating to the going upon the land by the said wife, Rebecca Barron, and which was excepted to by the defendants. The undisputed evidence in the case shows that the payments made by the

plaintiff John T. Barron to W. G. Moore and to J. W. Moore, executor of W. G. Moore, were made by him as purchaser of the mortgage, and not as payment on the mortgage debt, and hence the court committed no error in making that statement to the jury in the oral charge.

The evidence without conflict shows that the undivided one-third interest in the land claimed by the defendant Hood, was held and so claimed by him through a sheriff's deed, under a levy and sale by the sheriff of such undivided one-third interest as the property of the said Jesse II. Barron, and that long subsequent to the execution of the mortgage by said Jesse to W. G. Moore, and under which the plaintiff was claiming title. This warranted the giving by the court of written charge numbered one requested by the plaintiff. The propositions of law asserted in the remaining written charges given at the plaintiff's request are correct, and therefore were properly given. The written charges numbered one, two, four, five, six and eight, requested by defendants, were in effect the general affirmative charge as to the defendants named, and were not warranted under the evidence and properly refused. The charge No. 9 was properly refused, being not only misleading, but does not state the law correctly. There may be a claim of ownership, but when it comes to the question of possession, there must be something more than a mere claim—must be an actual possession.

The uncontradicted testimony of John T. Barron is that he purchased from W. G. Moore, the mortgagee, in his lifetime the mortgage in question and which was executed and given by Jesse F. Barron, for an agreed sum or price, and that he the said John T. paid said Moore during his life all of said purchase price but about sixty dollars, and this balance of sixty dollars, he paid to J. W. Moore, the executor of W. G. Moore, who thereupon transferred or assigned the mortgage to said John T. Barron. The assignment or transfer endorsed on the mortgage by J. W. Moore was insufficient to pass the legal title to the lands contained in the mortgage. One of the demises in the complaint is laid in the heirs at law of W. G. Moore. It is contended by appellants that the payments made by John T. Barron operated to extin-

[Case v. Hulsebush.]

guish the mortgage debt, and thereby divested the title out of the heirs at law of W. G. Moore, and revested the same in Jesse F. Barron, the mortgagor. We think this contention without merit, and unsupported by the evidence or sound reasoning. There is nothing in the evidence to show that the payments made by John T. Barron were intended or contemplated by either Barron or Moore as payments on the mortgage debt, but on the contrary were payments made in the purchase of the mortgage. The transfer and assignment endorsed upon the mortgage by J. W. Moore repels the idea of a payment and satisfaction of the mortgage debt. Under this view of the case, and we have no doubt of the correctness of it, the written charges 10, 11 and 12, requested by the defendants, were properly refused.

We find no error in the record, and the judgment of the circuit court is affirmed.