(98 South. 635)
**LEWIS et al. v. MARTIN. (6 Div. 961.)**

(Supreme Court of Alabama. Oct. 18, 1923. Rehearing Denied Dec. 6, 1923.)

**1. Appeal and error ⟨⟩1—Appeal only by grace of statute.**

Appeals are taken to appellate courts not as a vested right but by grace of statute, and must be perfected and prosecuted in manner prescribed. Code 1907, § 2855.

**2. Appeal and error ⟨⟩351(1)—Appeal taken where security for costs lodged with officer, if thereafter approved by him.**

In view of Gen. Acts 1915, p. 711, § 1, an appeal is taken where security for costs is lodged with the proper officer, if it is thereafter approved by him.

**3. Appeal and error ⟨⟩436—After appeal, lower court loses control.**

After an appeal is taken, the trial court loses control of the subject-matter or question made subject of the order, judgment, or decree appealed from, and action should be suspended there until the appeal is effectively abandoned, dismissed, or decided.

**4. Appeal and error ⟨⟩339(2)—Rule stated as to time for taking appeal from ruling on demurrer to bill.**

Gen. Acts 1915, p. 711, as amended by Gen. Acts 1919, p. 84, did not change Code 1907, §§ 2838, 2856, for taking appeals from rulings on demurrer to a bill and certain other interlocutory orders before final decree, when such ruling did not dismiss the bill, but, if the ruling dismisses the bill, it becomes a final decree under section 2837, and appeal therefrom may be taken within six months.

**5. Wills ⟨⟩333—Verdict in will contest held basis of final decree.**

Where a bill in will contest was sought to be maintained under Code 1907, §§ 6207, 6209, and right of jury trial of issues was demanded and had under section 6209, and not by grace of court, the verdict was not merely advisory, but was required to be the basis of final decree.

**6. Wills ⟨⟩333—Judgment must be pursuant to verdict.**

In will contest, where jury trial was had as matter of right, decree therein must follow or be pursuant to verdict; that is, the entry of record of the mind or determination of the court audibly expressed is the decree, and not the verdict.

**7. Judgment ⟨⟩270—Ministerial act of entry record must precede judgment.**

The ministerial act of entry record or registry of the determination of the court must be performed before that determination becomes the judgment, decree, or order, unless it be an order of continuance of motion for new trial or rehearing.

**8. New trial ⟨⟩156—Regularity of entry of order of continuance may be waived.**

The regularity of entry of an order of continuance of a motion for new trial or rehearing may be waived by respective parties in adverse interest by submitting for judgment or decree on such motion made in term time, and not thereafter properly continued to the ensuing term.

**9. Appeal and error ⟨⟩339(2)—Decree overruling demurrer to bill not reviewed in appeal taken more than 30 days thereafter.**

Where decree overruling demurrer to bill was entered November 30, 1921, and appeal taken as of November 27, 1922, by giving security for costs approved by the clerk or register, the decree will not be reviewed on such

appeal, it not being within 30 days from date of decree on demurrer.

**10. Appeal and error ⬥339(2)—Proper method of securing review of order overruling demurrer to bill stated.**

Had appeal from decree overruling demurrer to bill, taken more than 30 days thereafter, not been taken under Code 1907, § 2838, and Gen. Acts 1915, p. 722, by first giving security for costs before final decree, overruling such demurrer might be reviewed, under section 2837.

**11. Appeal and error ⬥870(3)—Plaintiffs, appealing too late from decree overruling demurrer to bill, held not entitled by abandoning appeal to have decree reviewed on appeal from final decree.**

Where decree overruling demurrer to bill was not reviewable by a first appeal, under Code 1907, § 2838, because taken more than 30 days after decree, having elected so to appeal, plaintiffs were irrevocably bound thereby as to ruling on demurrer, and it was not thereafter reviewable on final decree at election of plaintiffs by an abandonment of the first appeal.

**12. New trial ⬥156—General order of continuance does not keep motion for new trial alive.**

A general order of continuance does not keep a motion for new trial or rehearing alive; if such motion is not called to the court's attention within the term and is not duly continued, the court may not entertain it at subsequent term against objection.

**13. Appeal and error ⬥345(1)—Proper motion for new trial continued to subsequent term affects time of appeal.**

A proper motion for new trial or rehearing, made during term, and duly continued to a subsequent term, will affect the time within which an appeal may be taken, or if heard without objection will conserve the same purpose, Code 1907, p. 1522, § 22.

**14. Equity ⬥392—Rehearings in chancery applied for during term only.**

Rehearings in chancery must be applied for during the term in which the decree is rendered. Rules and Practice, Chancery Court, No. 81, Code 1907, p. 1553; Gen. Acts 1915, p. 708, § 3; circuit court rule 22, Code 1907, p. 1522.

**15. Evidence ⬥41—Judicial notice taken of terms of circuit courts.**

The Supreme Court takes judicial notice of the term times of circuit courts. Gen. Acts 1915, p. 707.

**16. Wills ⬥337—Circumstances making inapplicable statute providing that court shall lose all power over its decree after 30 days; "rehearing."**

Where, in will contest, verdict was rendered at June term, but no final decree rendered thereon at such term nor motion made for new trial, and at subsequent term motion for new trial was continued, heard without objection, and overruled, since there was no final decree in the June term, Gen. Acts 1915, p. 707, providing that the court should lose all power over it after 30 days from date on which judgment or decree was rendered, is not applicable, the motion for new trial not being a "rehearing" in equity, within chancery practice rule 81, Code 1907, p. 1553.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Rehearing.]

**17. Continuance ⬥3—Verdict not incorporated into final decree before adjournment; case continued by operation of law.**

Where verdict rendered at June term was not incorporated into final decree before adjournment, the case as a pending cause was continued by operation of law, with the expiration of that term, to the next ensuing term, at which final decree was entered.

**18. Appeal and error ⬥805—Appellant may abandon an appeal where no "prejudice" results to adversary.**

Where there has been given no supersedeas of the judgment, appellant may waive or abandon an appeal, where no prejudice will result thereby to the other party; "prejudice" meant being the loss of some right to which appellee has become entitled because of the taking of the appeal.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Prejudice.]

**19. Appeal and error ⬥805—Failure to perfect appeal before inconsistent procedure in lower court held abandonment.**

Appeal from decree overruling demurrer to bill *held* abandoned by the failure to perfect the same in the Supreme Court before the voluntary and inconsistent procedure in the lower court of the respective parties in adverse interest in subsequently submitting the cause for final decree, and in appealing in due time from such decree.

**20. Exceptions, bill of ⬥41(5) — When time begins to run for presenting bill of exceptions stated; "date."**

The "date" referred to in Code 1907, § 3019, from which the time is computed within which the bill of exceptions must be presented is that on which formal judgment or decree is rendered, and not the "date" on which verdict is returned into court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Date.]

**21. Wills ⬥337—Motion for rehearing at subsequent term not maintained.**

Where rehearing sought in a will contest was an order for a new trial to be had before another jury, not being made at the term within which the verdict was returned, it could not thereafter be maintained as against objection of adversaries.

**22. Appeal and error ⬥515(2)—Trial judge's certification of bill of exceptions sufficient compliance with statute requiring testimony to be transcribed.**

Certificate of bill of exceptions by trial judge was sufficient compliance with Gen. Acts 1915, p. 705, that the judge or chancellor may require testimony taken orally to be transcribed.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**23. Appeal and error ⬤➡1078(1)—Errors not insisted on not considered.**

Assignments of error not insisted on are not considered.

**24. Wills ⬤➡161—Act of one beneficiary in obtaining a will through undue influence operates against all beneficiaries.**

Where will was contested for legatee's undue influence, it was proper to instruct that it was not necessary that there should be confidential relations between all beneficiaries and testatrix; but if there was such relation with one of the family, and the will was procured through his undue influence, it operated against all the family.

**25. Wills ⬤➡161—Part of will unaffected by undue influence may stand, though remainder annulled.**

Where will was in part the effect of undue influence, and in part testatrix's own free will, it is not wholly void, and the latter part will stand, although the will be annulled as to the former.

**26. Wills ⬤➡396—Objection to charge as misleading should have been raised below.**

In a will contest, objection to an instruction as having misleading tendencies as to partial probate should be raised in the trial court by evidence and explanatory charge pursuant thereto.

**27. Wills ⬤➡332—Instruction as to operation against all beneficiaries of undue influence exerted by one held proper.**

Where will was contested for undue influence, it was proper to give contestant's charge that, if the jury should believe from the evidence that the instrument offered for probate as the will was the result of undue influence exercised by residuary legatee, then to find for contestant.

**28. Wills ⬤➡329(3)—Instruction on presumption of undue influence and burden of showing severance of confidential relation and absence of fraud or coercion held proper.**

Where will was contested for legatee's undue influence, it was proper to instruct that, if there was evidence of existence of a confidential relationship between testatrix and legatee prior to and at time of the will, and that legatee was active in its execution, such as initiating and participating in preparation, employing draftsmen, selecting witnesses, excluding persons from testatrix, and concealing will after it was made, the presumption of undue influence arose, and cast on legatee burden of showing severance of confidential relationship, and that will was not induced by the undue influence, coercion, or fraud of legatee.

**29. Wills ⬤➡329(3)—Instruction on burden of legatee to show will not induced by his coercion held proper.**

Where will was contested for legatee's undue influence, it was proper to instruct that, if at time of execution a confidential relationship existed between testatrix and legatee, in which she reposed confidence and trust in him, and he was active in and about preparation and execution of the will, a presumption of undue influence was raised, casting on legatee the burden of showing that will was not induced by his coercion, directly or indirectly.

**30. Wills ⬤➡330(1)—Instruction to find for contestant in case of finding lack of testamentary capacity held proper.**

In a will contest, it was proper to instruct that, if the jury was satisfied that at time of making the will testatrix did not have testamentary capacity, the verdict must be against validity of the paper propounded, regardless of whether there was fraud or undue influence, such instruction not referring to the jury a mere question of law.

**31. Wills ⬤➡329(3)—Requested charge on burden of proof in will contest held confusing.**

Where, in a will contest, the question of undue influence was sought to be eliminated or ignored in a requested instruction that the burden of proof was on contestant to show execution procured by fraud or deceit, there was no error in refusing the request, notwithstanding instruction given at request of proponent that the burden of proof was on contestant to show that the will was executed by undue influence.

**32. Trial ⬤➡261—Refusal of incomplete charge on particular issue in will contest not error.**

Where elements required under an issue were correctly indicated in a given charge, it was not error to refuse a requested charge thereon which was incomplete.

**33. Wills ⬤➡332—Charge defining undue influence as equivalent of force properly refused.**

Where a will was contested for legatee's undue influence, it was proper to refuse the charge that undue influence as used in the case meant the equivalent of force which testatrix was not able to resist.

**34. Trial ⬤➡240—Charge held argumentative and invasive of jury's province.**

In a will contest, a requested charge that if testatrix, at the time of execution, possessed sufficient capacity to attend to her ordinary business, then she had sufficient capacity to make a valid will was argumentative, and invasive of jury's province.

**35. Trial ⬤➡253(3)—In will contest, charge held properly refused as ignoring issue.**

In a will contest, requested charge that the sole question was whether testatrix was of testamentary capacity was properly refused, where the issue of undue influence was also in the case.

**36. Trial ⬤➡253(3) — Charge stating issues in will contest ignoring one of them properly refused.**

In a will contest, charge that the sole question submitted was whether will was procured by undue influence ignored issue of testamentary capacity, also in the case, and was properly refused.

**37. Wills ⬤➡330(1)—Charge on testamentary capacity omitting testatrix's knowledge of manner of disposal of property properly refused.**

Where a will was contested for mental incapacity and undue influence, an instruction

that, if testatrix, at time of will, had sufficient mind to know the property she was disposing of, and the persons to whom she was willing it, then she had sufficient mind to make a valid will omitted the requirement that she knew, at the time the will was executed, the manner in which she wished to dispose of her property, and its refusal was not error.

#### 38. Wills ☞332—Refusal to instruct that undue influence must amount to coercion or force proper.

In a will contest, it was proper to refuse to instruct that the will was not procured by undue influence, unless it "amounted to coercion or force."

#### 39. Wills ☞332—Instruction in will contest as to moral coercion and importunity held proper.

Where a will was contested for legatee's undue influence, it was proper to instruct that, if the evidence showed that it was obtained by moral coercion or by importunity which could not be resisted by testatrix, then to find for contestant.

#### 40. Wills ☞332—Charge on effect of means employed as affecting undue influence held proper.

Where a will was contested for legatee's undue influence, it was proper to instruct that it is not the means employed so much as the effect produced which must be considered in determining whether there was undue influence, and, if in the particular case it resulted in disposition contrary to desire of testatrix, the influence was undue.

#### 41. Wills ☞155(1)—Undue influence exists when legatee obtains ascendancy preventing exercise of testatrix's judgment.

In a will contest, it was proper to instruct, on the question of whether testatrix's free agency was destroyed or mastered by bringing about a submission of her will to that of legatee's, that it is essential to ascertain the power of coercion on the one hand and the liability to its influence on the other, and that, whenever through implicit reliance of one on the good faith of another the latter obtains an ascendancy which prevents the former from exercising an unbiased judgment, undue influence exists.

#### 42. Wills ☞332—Charge on effect of undue influence held proper.

Where will was contested for alleged undue influence of legatee, it was proper to charge that the true test as to undue influence is to be found, not so much in the nature and extent of the influence exercised, as in the effect that it had on the person making the will.

#### 43. Wills ☞330(3), 332—Charge on unnatural disposition of property as affecting issues of testatrix's mental capacity and undue influence held proper.

Where testatrix's will was contested for alleged mental incapacity and undue influence of legatee, it was proper to charge that, if she made unnatural disposition of her property, such fact could be taken into consideration, with other evidence, in determining the issues.

#### 44. Wills ☞332—When testatrix's free agency was mastered, undue influence existed.

Where testatrix's will was contested for undue influence of legatee, it was proper to charge that whether her free agency is destroyed or mastered by physical force or mental coercion by threats which occasion fear, or by importunity, which she is too weak to resist, or which extorts compliance in hope of peace, is immaterial; that it is essential to ascertain as far as possible the power of coercion on the one hand and liability to its influence on the other, and that when one obtains ascendancy over another which prevents exercise of unbiased judgment, then undue influence exists.

#### 45. Wills ☞330(1)—Charge held not to present question of law.

In a will contest, it was not error to charge that, if the jury was satisfied from the evidence that at time of execution testatrix did not have testamentary capacity, verdict must be for contestants and against validity, or that, if it was found that testatrix did not have testamentary capacity, then they need go no further in consideration of issues of fraud or undue influence—such charges not submitting a question of law.

#### 46. Wills ☞332—Charge on influence amounting to coercion as equivalent to undue influence held proper.

Where will was contested for legatee's undue influence, it was proper to instruct that, if it was believed that it was obtained by exercise of influence amounting to coercion, then to find that it was obtained by undue influence.

#### 47. Wills ☞330(1)—Requested instruction on testamentary capacity held incomplete and confusing.

A charge on testamentary capacity in a will contest that, if testatrix at time of execution of will had sufficient mental capacity, among other things, to know the persons to whom she wished to will her property, then she was competent to make a will, was incomplete and confusing, as it failed to define the "other things" the testatrix was required to know and appreciate to possess testamentary capacity.

#### 48. Wills ☞329(1, 2)—Refusal of charge in will contest as to partial probate held not error.

In a will contest, on the ground of undue influence, and lack of testamentary capacity, held there was no error in refusing charges as to partial probate.

#### 49. Appeal and error ☞757(4)—Charges should be indicated in brief by numbers or letters.

Charges should be indicated in briefs by numbers or letters to make them of ready access.

#### 50. Witnesses ☞180—General objection insufficient to challenge plaintiff's testimony as to transaction with deceased.

In a will contest, a general objection to testimony of plaintiff was not sufficient to challenge his testimony as detailing transactions with or statements by deceased, within Code 1907, § 4007.

---

☞ For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

51. Wills ⊜➙298—Deputy clerk's evidence as to initial probate held without error.

In view of Gen. Acts 1915, p. 549, giving authority to deputy clerks in a probate office, where, in a will contest, the entire record of initial probate was before the court, evidence of the clerk that she had custody of papers and made entries from bench notes of the judge was proper.

52. Wills ⊜➙54(2), 164(4)—In a will contest testatrix's attitude towards son cut off with nominal bequest held relevant.

Where a mother's will left $100 only to a son, whom she described in the will as a profligate, in a contest of the will evidence tending to show the attitude of the mother toward the son was relevant.

53. Wills ⊜➙53(6)—Testatrix's illness relevant as affecting testamentary capacity.

Where will was contested for testamentary incapacity, evidence of testatrix's illness and that of her family, and the nature and duration thereof, was relevant.

54. Wills ⊜➙54(1)—Testatrix's threat to take own life held pertinent on issue of testamentary capacity.

Where will was contested for testatrix's mental incapacity, the fact that she did take her own life made pertinent her declarations, relative thereto and her threats to end her own existence.

55. Wills ⊜➙54(2), 164(4)—In a will contest, testatrix's relations with principal beneficiary proper subject of inquiry.

In contest of will on ground of undue influence and lack of testamentary capacity, the family, social, and business relations of testatrix with her brother, the principal beneficiary under the will, and the nature of the trust and confidence she reposed in him were proper inquiry.

56. Wills ⊜➙164(1)—Husband's lack of knowledge of existence of wife's will held material on issue of undue influence.

Where will was contested for legatee's undue influence, it was not error to permit testatrix's husband to show that he did not know of the existence of the will until after the wife's death, and then was informed by his brother-in-law; it being material on the issue of undue influence.

57. Wills ⊜➙54(2)—Testatrix's letter before suicide held not too remote to show mental condition.

A letter written a husband by his wife immediately before taking her life, and two or three years after the date of her will, *held,* in a contest of the will by the husband, not too remote, when considered with other evidence as tending to show her physical and mental condition, and affording reasonable inference the jury might draw of her affection for him, and competent as tending to show whether will was natural or unnatural disposition of property, or testatrix possessed testamentary capacity at time of will.

58. Wills ⊜➙53(9)—In a will contest, conversation between contestant and his son, cut off with nominal bequest, bearing on spendthrift character of latter held immaterial.

Where husband contested his wife's will for alleged mental incapacity, a conversation between contestant and his son about the latter desiring testatrix to let him have the money given him now, and the father's observation that, if she gave or had left him any amount, he wouldn't have it sixty days was immaterial.

59. Wills ⊜➙54(3), 165(5)—Evidence of testatrix's statement as to changing will held pertinent in will contest.

Where will was contested for testatrix's alleged mental incapacity and for undue influence, exerted by her brother, evidence of what testatrix stated to witness of an interview with the brother about changing the will was pertinent and material under both issues.

60. Wills ⊜➙53(1), 164(1)—Contestant's statement after testatrix's death held immaterial.

In contest by husband of wife's will, on ground of lack of testamentary capacity and undue influence, evidence of statements of husband after death of testatrix were immaterial, and properly excluded.

61. Wills ⊜➙164(5)—Failure of legatee to discuss will with husband of testatrix held in contest by husband in nature of admission.

In contest by husband of wife's will, on ground of undue influence of legatee, there was no error in overruling proponent's objection to question to legatee on cross-examination as to whether he had discussed the will with the husband at any time from time of making will until testatrix's death, and in refusing to exclude his answer "never," such failure to discuss the will being in the nature of an admission against interest proper for jury's consideration.

62. Evidence ⊜➙155(5)—Where irrelevant evidence given in will contest for proponent, contestant properly allowed to testify in rebuttal.

Where, in contest by husband of wife's will for undue influence of legatee, proponent was allowed to give irrelevant evidence as to an alleged private transaction between the husband and legatee, by virtue of which the latter sold a lot for the husband, and turned over to him the purchase money, there was no error in allowing the husband to testify in rebuttal that the legatee never gave him the purchase money for the lot.

63. Evidence ⊜➙155(5)—Where irrelevant evidence given for proponent in will contest, and contestant allowed to testify in rebuttal, held proper to exclude further evidence to corroborate proponent.

Where, in contest by husband of his wife's will, proponent has been allowed to give irrelevant evidence as to a sale of a lot for the husband by a legatee, and the turning over to the husband of the purchase money, and the husband has been allowed to testify in rebuttal that he never received the purchase money, it is not prejudicial error to exclude further evidence consisting of deposit slips and checks in corroboration of proponent on this matter.

---

⊜➙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**64. Wills ☞292—Source of title to property conveyed by will immaterial.**

In a will contest, the source of title to properties sought to be devised or bequeathed by the will is immaterial.

**65. Wills ☞322—Ruling excluding irrelevant testimony after close of evidence to combat other irrelevant evidence sustained.**

Where, in a will contest, proponent was allowed to give irrelevant evidence as to private transactions between himself and contestant, by virtue of which the former sold a lot for contestant, and turned over to him the purchase money, and contestant was allowed to testify that he never received the purchase money, the record reciting that the evidence was then closed, a subsequent ruling excluding proponent's testimony in corroboration of his version will be sustained.

**66. Wills ☞329(1, 2)—Oral charge could state generally respective theories and issues of fact.**

In the oral charge in a will contest, court could state generally the respective theories of the parties and the issues of fact.

**67. Wills ☞396—In will contest, objections to oral charge first made on appeal too late.**

An objection in a will contest that the oral charge was insufficient and submitted questions of law cannot be made for the first time on appeal.

On Rehearing.

**68. Appeal and error ☞971(2)—Evidence ☞498½—Question of competency of witness to give opinion left to sound discretion of the court.**

Where will was contested for mental incapacity and undue influence of a legatee, question of competency of witnesses to give their opinion as to testatrix's sanity rested on the sound discretion of the court, the exercise of which will not be revised, unless clearly appearing to be erroneous.

Appeal from Circuit Court, Jefferson County, Bessemer Division; J. C. B. Gwinn, Judge.

Bill by John T. Martin against William H. Lewis and others, contesting the probate of the will of Mary Lewis Martin, deceased. From a judgment for complainant, respondents appeal. Affirmed.

The grounds of contest are thus stated in the bill:

"The alleged execution of said will by Mary Lewis Martin was obtained by undue influence exercised on the part of William H. Lewis, a contingent residuary legatee of said will, and one of the executors thereof, in this:

"The respondent, William H. Lewis, as executor, was the brother of the testatrix, and for a long period of time, to wit, 15 years preceding her death, occupied a confidential relationship to the said Mary Lewis Martin, managing and controlling her estate as her agent, making loans of her money and collecting the same and the interest thereon; that he procured the execution of said will, selecting the counsel to prepare the same, and the witnesses thereto, excluding the complainant from the presence of testatrix at and about the time of the execution thereof, taking possession of the said will and concealing the fact that said will had been made and executed.

"The said Mary Lewis Martin was, at the time of making said last will and testament, of unsound mind, and incompetent to make said last will and testament.

"The execution of said last will and testament was obtained by misrepresentation or fraudulent statements of facts, and upon said fraudulent misrepresentations or statements the said Mary Lewis Martin relied at the time of the execution of said will.

"Because the property named and described in the said alleged will and testament was not the property of the said Mary Lewis Martin, nor did she own the same, or have any legal right or authority to dispose of the same by will; that all of the said property so attempted to be disposed of by said last will and testament was in truth and in fact the property of the complainant, John T. Martin, who owned the same."

Item 2 of the will is as follows:

"(2) I give, devise and bequeath to my son, George Lewis Martin, one hundred ($100.00) dollars in cash, the same to be his absolutely. I limit this absolute bequest to my said son on account of the immoral, improvident and profligate life he has been and is now living, and his utter disregard of my counsel, advice and wishes and his total lack of consideration for me, his life having been such that I cannot trust him with funds or property to supply his ordinary necessities and comforts of life."

The following charges were given at complainant's request:

"A. It is not necessary that there should be confidential relations between all the beneficiaries and the testatrix. If there is such relation with one of a family, and the will is found to have been procured through his undue influence, it operates against all the family.

"B. If the evidence shows that the will was obtained by moral coercion, or by the importunity which could not be resisted by the testatrix, you must find that issue in favor of the contestant.

"C. It is not the means employed so much as the effect produced which must be considered in determining whether undue influence has contributed to the making of the will, for though the influence exerted over the testatrix was such as if applied under ordinary circumstances or exercised over a person ordinary power of resistance would be regarded as innocent, yet, if in the particular case it resulted in a disposition of property contrary to the testatrix's desire, the influence was undue.

"D. If the jury believe from the evidence that the will makes an unnatural disposition of the property of the testatrix, this fact may be taken into consideration, together with or in connection with all the evidence in the case, in the determination of the issues involved.

"E. The true test as to undue influence is to be found, not so much in the nature and extent of the influence exercised, as in the

effect that such influence has upon the person who is making the will.

"F. If the jury believe from the evidence that the instrument offered for probate as the will of Mary Lewis Martin is the result or product of undue influence, exercised by William H. Lewis, over his sister, they should find for the contestant, John T. Martin.

"G. The court charges the jury that, if they are reasonably satisfied from the evidence of the existence of a confidential relationship between the testatrix and William H. Lewis prior to and at the time of the making of the will, and that the said William H. Lewis was active in and about the execution and preparation of said will, such as the initiation of proceedings for the preparation of the will, or participation in such preparation, employing the draftsman, selecting the witnesses, excluding persons from the testatrix at or about the time of the execution of the will, concealing the making of the will after it was made, and the like, then a presumption of undue influence arises, and casts on William H. Lewis the burden of showing a severance of the confidential relationship by the interposition of independent and competent advice, or by evidence of other facts sufficient to show that the act of making the will was voluntary on the part of the testatrix, and was not the result of the undue influence of the said William H. Lewis.

"H. Whether the free agency of the testatrix is destroyed or mastered by physical force or mental coercion by threats which occasion fear, or by importunity which the testatrix is too weak to resist, or which extorts compliance in the hope of peace is immaterial. In considering the question, therefore, it is essential to ascertain as far as practicable the power of coercion on the one hand, and the liability of its influence on the other. And whenever through weakness, ignorance, dependence, or implicit reliance of one on the good faith of another, the latter obtains an ascendancy which prevents the former from exercising an unbiased judgment, undue influence exists.

"I. The court charges the jury that, if they are reasonably satisfied from the evidence of the existence of a confidential relationship between the testatrix and William H. Lewis prior to and at the time of the making of the will, and that the said William H. Lewis was active in and about the execution and preparation of said will, such as the initiation of the proceedings for the preparation of the will, or participation in such preparation, employing the draftsman, selecting the witnesses, excluding persons from the testatrix at or about the time of the execution of the will, concealing the making of the will after it was made, and the like, then a presumption of undue influence arises, and casts on William H. Lewis the burden of showing that the will was not induced by coercion on his part, directly or indirectly.

"K. It is not the means employed so much as the effect produced which must be considered in determining whether undue influence has contributed to the making of a will, for though the influence exerted over the testatrix was such as, if applied under ordinary circumstances, or exercised over persons of ordinary powers of resistance, would be regarded as innocent, yet, if in the particular case it resulted in a disposition of property contrary to the testatrix's desire, the influence was undue.

"L. In considering the question of whether the free agency of the testatrix was destroyed or mastered by a mental coercion or by other means or methods of bringing about a submission of the will of the testatrix to that of the said William H. Lewis, it is essential to ascertain, as far as practicable, the power of coercion upon the one hand, and the liability to its influence on the other. And whenever, through weakness, ignorance, dependence, or implicit reliance of one on the good faith of another, the latter obtains an ascendancy, which prevents the former from exercising an unbiased judgment, undue influence exists.

"N. If the jury believe from the evidence that at the time of the execution of the instrument offered for probate there existed between Mrs. Mary Lewis Martin and her brother, William H. Lewis, a confidential relationship, in which Mrs. Martin reposed confidence and trust in her said brother; that the said William H. Lewis is a residuary legatee under the said will; and that W. H. Lewis was active in and about the preparation and execution of the will, such as the initiation of the proceedings for the preparation of the will, or employing the attorney who drew the will, and the like—I charge you that the law raises a presumption of undue influence exercised by W. H. Lewis over his sister, Mary Lewis Martin, and casts upon him the burden of showing that the execution of the will offered for probate was not induced by coercion on his part directly or indirectly.

"O. The court charges the jury that, if they are reasonably satisfied of the existence of confidential relations between the testatrix and William H. Lewis with an activity on the part of the said Lewis in and about the execution and preparation of said will, such as the initiation of proceedings for the preparation of the will, or participation in such preparation, employing the draftsman, selecting the witnesses, excluding persons from the testatrix at or about the time of the execution of the will, concealing the making of the will after it was made, and the like—these facts, if proven to the reasonable satisfaction of the jury, will raise a presumption of undue influence, and cast on the said William H. Lewis the burden of showing that the will was not induced by coercion or fraud on his part, directly or indirectly.

"P. The court charges the jury that, if the jury is reasonably satisfied from the evidence that, at the time of the making of the will propounded for probate in this case, Mary Lewis Martin did not have testamentary capacity to make a will, the verdict must be for the contestant, and against the validity of the paper propounded for probate.

"Q. The court charges the jury that, if you believe from the evidence that the will was obtained by the exercise of influence amounting to coercion, then you must find that the will was obtained by undue influence.

"R. If the jury believe from the evidence to their reasonable satisfaction that the testatrix, Mary Lewis Martin, at the time of making the will propounded for probate in this case, did not have testamentary capacity, then the jury need go no further in their consideration to ascertain whether there was fraud or undue influence. And it would be the duty of the jury under the law, for this reason alone, to

render a verdict in favor of the contestant, and against the validity of the alleged will in this case."

These requests for instruction by respondents were refused:

"(7) The burden of proof is on the contestant to reasonably satisfy you by the evidence that the execution of the will in question was procured by fraud or deceit exercised on Mary Lewis Martin.

"(9) 'Undue influence' as used in this case means such influence as is the equivalent of force which the testatrix was not able to resist.

"(11) The court charges the jury that, if Mary Lewis Martin, at the time she executed the will in question, had sufficient mental capacity, among other things, to know the persons to whom she wished to will her property, then she had, under the law, sufficient mental capacity to make the will in question.

"(12) If you find from the evidence that Mary Lewis Martin, at the time she signed the will in question, possessed sufficient capacity to attend to her ordinary business, then I charge you that she had sufficient capacity to make a valid will.

"(13) The sole question submitted to you for your decision is whether or not, at the time the will in question was signed, Mary Lewis Martin was of testamentary capacity.

"(15) The sole question submitted to you for your decision is whether or not the will in question was procured to be made and executed by the exercise of undue influence on Mary Lewis Martin.

"(18) If you find from the evidence that Mary Lewis Martin, at the time she made the will in question, had sufficient mind to know the property that she was disposing of, and to know the persons to whom she was willing it, then I charge you that she had sufficient mind within the meaning of the law to make a valid will. If you find from the evidence that no influence that amounted to coercion or force was exerted on Mary Lewis Martin, at the time of the execution of the will in question, then I charge you that the will was not procured by undue influence, within the meaning of the law."

Huey & Welch, of Bessemer, and George L. Bailes, of Birmingham, for appellants.

Charges A, F, G, and R were erroneously given for complainant. Councill v. Mayhew, 172 Ala. 295, 55 South. 319; 2 Alexander on Wills, §§ 366, 612; Florey's Ex'rs v. Florey, 24 Ala. 241; Henry v. Hall, 106 Ala. 84, 17 South. 191, 54 Am. St. Rep. 22; Blakey's Heirs v. Blakey's Ex'x, 33 Ala. 611; Lyons v. Campbell, 88 Ala. 462, 7 South. 250; Eastis v. Montgomery, 93 Ala. 293. 9 South. 311; Scarbrough v. Scarbrough, 185 Ala. 468, 64 South. 105; Johnson v. Johnson, 206 Ala. 523, 91 South. 260; Bancroft v. Otts, 91 Ala. 279, 8 South. 286, 24 Am. St. Rep. 904; In re Purcell's Estate, 164 Cal. 300, 128 Pac. 932; Knox v. Knox, 95 Ala. 495, 11 South. 125, 36 Am. St. Rep. 235; Jeffries v. Pitts, 200 Ala. 201, 75 South. 959; Avondale Mills v. Bryant, 10 Ala. App. 507, 63 South. 932; Tidwell v. State, 70 Ala. 33. Requested charges 7 and 9 should have been given for respondents. Johnston v. Johnston, 174 Ala. 220, 57 South. 450; Egbers v. Egbers, 177 Ill. 82, 52 N. E. 285; Burney v. Torrey, 100 Ala. 157, 14 South. 688, 46 Am. St. Rep. 33; 2 Alexander on Wills, § 577; Taylor v. Kelly, 31 Ala. 70, 68 Am. Dec. 150. West v. Arrington, 200 Ala. 420, 76 South. 352; Mullen v. Johnson, 157 Ala. 262, 47 South. 584; McBride v. Sullivan, 155 Ala. 166, 45 South. 902; Cummings v. McDonell, 189 Ala. 96, 66 South. 717; O'Donnell v. Rodiger, 76 Ala. 227, 52 Am. Rep. 322. Where a will is shown to be the result of undue influence only as to a part, it is not wholly void. Shirley v. Ezell, 180 Ala. 352, 60 South. 905; Authorities supra. The law presumes every person sane and every will valid. 1 Alexander on Wills, § 396. On the question of testamentary capacity vel non, evidence must be confined to the time of making or signing the will. Coghill v. Kennedy, 119 Ala. 641, 24 South. 459. A nonexpert can only express his opinion of a person's sanity after narrating the facts and circumstances on which it is based. Loveman v. B. R., L. & P. Co., 149 Ala. 515, 43 South. 411. The complainant Martin was an incompetent witness in this case. Walker v. Walker's Ex'r, 34 Ala. 472; McCrary's Adm'r v. Rash's Adm'r, 60 Ala. 374; Poarch v. State (Ala. App.) 95 South. 781. There was no note of testimony as to the minor respondent, and there was hence no submission. Blackburn v. Moore, 206 Ala. 335, 89 South. 745; Lunday v. Jones, 204 Ala. 326, 85 South. 411; Brassell v. Brassell, 205 Ala. 201, 87 South. 347; Milam-Morgan Co. v. State, 205 Ala. 315, 87 South. 348.

Martin, Thompson & Turner, of Birmingham, for appellee.

Bills of exceptions must be presented within 90 days from date of judgment. Code 1907, § 3091. Motion for new trial must be presented within 30 days from date of judgment. Acts 1915, p. 707. Complainant was a competent witness; authorities cited by appellant are inapt. Code 1907, § 4007; Kumpe v. Coons, 63 Ala. 448; Frederick v. Wilbourne, 198 Ala. 137, 73 South. 442. Charges A and F are correct statements of law. Coghill v. Kennedy, 119 Ala. 641, 24 South. 459; Keeble v. Underwood, 193 Ala. 582, 69 South. 473. Charges G, I, N, O, and P were correct. McQueen v. Wilson, 131 Ala. 606, 31 South. 94; Betz v. Lowell, 197 Ala. 239, 72 South. 500; Jones v. Brooks, 184 Ala. 115, 63 South. 978; Coghill v. Kennedy, supra: Bancroft v. Otis, 91 Ala. 279, 8 South. 286, 24 Am. St. Rep. 904; Schieffelin v. Schieffelin, 127 Ala. 14, 28 South. 687. Appellant's requested charges were well refused; authorities cited are not in point. Charges C, E, H, K, and L, given for complainant, were correct. Coghill v. Kennedy, supra; Gaither v. Phillips, 199 Ala. 689, 75 South. 295.

The fact of suicide is pertinent to the issue of insanity. Karow v. Cont. Ins. Co., 57 Wis. 56, 15 N. W. 27, 46 Am. Rep. 17. A witness shown to be intimate with the person may give his opinion as to sanity. Woodward Iron Co. v. Spencer, 194 Ala. 285, 69 South. 902; Bates v. Oden, 198 Ala. 569, 73 South. 921; Burney v. Torrey, 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33; James v. State, 167 Ala. 14, 52 South. 840; Odom v. State, 172 Ala. 383, 55 South. 820; Johnston v. Johnston, 174 Ala. 220, 57 South. 450.

THOMAS, J. The contest in equity was of the probate of the will of Mrs. Mary Lewis Martin, deceased. That instrument bore date of February 11, 1918, and testatrix died on December 29, 1920. The submissions are upon several motions to strike the respective bills of exceptions and dismiss the two appeals, and on the merits.

The two certificates of appeal are, respectively, of date March 29, 1923, reciting the giving of security for costs (November 27, 1922), and its due approval, and that notice was given of the appeal; and of date May 18, 1923, filed here May 24, 1923, reciting the giving and approval of security for costs May 18, 1923, and that notice of the appeal was given.

Questions sought to be presented by the respective motions to dismiss the appeals and to strike the bills of exceptions are: (1) To review the decree overruling demurrer to the bill as amended—decree rendered on November 30, 1921; (2) to review the several rulings made, and to which exceptions were reserved on the jury trial at the June term, 1922; (3) to review the overruling of the motion for new trial filed July 6, 1922, and continued and heard, and decree rendered November 11, 1922; and (4) to review the final decree (on verdict of jury) rendered on February 16, 1923.

[1] An appeal is taken to an appellate court, not as a vested right, but by the grace of a statute (Woodward Iron Co. v. Bradford, 206 Ala. 447, 90 South. 803, and must be perfected and prosecuted pursuant to the time and manner prescribed (Code 1907, § 2855; Liverpool, etc., Co. v. Lowe, 208 Ala. 12, 93 South. 765).

[2] Statutory provisions of the manner of taking an appeal are:

"That any appeal taken under the provisions of chapter fifty-three (53) of the Code of Alabama of 1907 must be taken within six months from the rendition of the judgment or decree, and shall be shown in the following manner: (a) When no bond or security is required the filing of a written statement setting out the parties and court, signed by the party appealing, or by his or her attorney of record that an appeal is taken from the judgment or decree in the case. (b) By giving security for the costs of the appeal to be approved by the clerk or register, or court. (c) By giving and having approved a supersedeas bond conditioned as required by law." Gen. Acts 1915, p. 711, § 1.

[3] It follows that the appeal is taken where security for costs is lodged with the proper officer, if it is thereafter approved by him. Jacobs v. Goodwater Graphite Co., 205 Ala. 112, 87 South. 363. After an appeal is taken, the court whence it came loses control of the subject-matter or question in the case made the subject of the order, judgment, or decree from which the appeal is taken. Action in said cause should be suspended in the trial court until the appeal is effectively abandoned, dismissed, or decided. State ex rel. Attorney General v. Livingston, Judge, 170 Ala. 147, 54 South. 109; Ex parte City Council of Montgomery, 114 Ala. 115, 14 South. 365; Ex parte Farrell, 196 Ala. 434, 71 South. 462, L. R. A. 1916F, 1257; Sharp v. Edwards, 203 Ala. 205, 82 South. 455; Montevallo Coal Min. Co. v. Reynolds, 44 Ala. 252; Moore v. Randolph, 52 Ala. 530; Southern Ry. Co. v. Birmingham, Selma, etc., Co., 131 Ala. 663, 29 South. 191. In Hudson v. Bauer Gro. Co., 105 Ala. 200, 16 South. 693, a motion for new trial was held too late when made after the appeal was taken. Smith v. State, 17 Ala. App. 565, 86 South. 120; Wade v. State, 18 Ala. App. 322, 92 South. 97. See, also, 1 Enc. Dig. of Ala. Rep. p. 397, § 441.

[4] The general provisions of the act of 1915 (Gen. Acts, p. 711) as amended by the act of 1919 (Gen. Acts, p. 84) did not change the special provisions of sections 2838 and 2856 of the Code, for taking an appeal from a ruling on demurrer to a bill in equity and certain other interlocutory orders before final decree, when such ruling did not dismiss the bill of complaint. Pepper v. Horn, 197 Ala. 395, 73 South. 46; Bowe v. Pierson, 206 Ala. 250, 89 South. 711; Minge v. Smith, 206 Ala. 330, 89 South. 473. If that ruling dismissed the bill, such decree became final, and is governed by the statute providing that appeals may be taken within six months from the date of rendition of the final decree or judgment. Code 1907, § 2837.

[5] It should be observed that the bill filed by John T. Martin (the husband) had for its object the contest of the will of his deceased wife, and was sought to be maintained under sections 6207 and 6209 of the Code. The right of trial by jury of such controverted issues of fact was duly demanded, and had as a matter of right under the statute (Code, § 6209), and not by the grace of the court. A. T. & N. Ry. Co. v. Aliceville Lbr. Co., 199 Ala. 391, 404, 405, 74 South. 441; Adams v. Munter & Brother, 74 Ala. 338; Mathews v. Forniss, 91 Ala. 157, 8 South. 661; Ex parte Colvert, 188 Ala. 650, 65 South. 964; Stephens v. Richardson, 189 Ala. 360, 66 South. 497; West v. Arrington, 200 Ala. 420, 76 South. 352. The verdict of that jury was

not merely advisory to the court, but was required by law to be made the basis of the final decree rendered in said cause.

[6] The verdict, however, was not the same as the decree of the court, which must follow or be pursuant to the verdict. That is to say, the entry of record of "the mind or determination of the court audibly expressed" is the judgment or decree of the court, and not the verdict. Hall, Adm'r, v. Hudson, Adm'r, 20 Ala. 284; Lockwood v. Thompson, 198 Ala. 295, 299, 73 South. 504; Edwards v. Davenport, 11 Ala. App. 423, 66 South. 878.

[7, 8] And the ministerial act of entry record or registry of the "determination" of the court must be performed before that "determination" becomes the judgment, decree or order thereof (3 Black. Com. 24; Zaner v. Thrower, 203 Ala. 650, 653, 84 South. 820; Hudson, Adm'r, v. Hudson, Adm'r, supra; Campbell v. Beyers, 189 Ala. 307, 313, 66 South. 651; Chighizola's Heirs v. Doe ex dem. Eslava, 24 Ala. 237; Stewart's Adm'r v. Stewart's Heirs, 31 Ala. 207; Capell v. Landano, 34 Ala. 135), unless it be an order of continuance of a motion for new trial or rehearing, the regularity of which entry may be waived by the respective parties in adverse interest (Shipp v. Shelton, 193 Ala. 658, 662, 69 South. 102; Ex parte Schoel, 205 Ala. 248, 87 South. 801; McCarver v. Herzberg, 135 Ala. 542, 544, 33 South. 486) by submitting for judgment or decree on such motion duly made in term time, and not thereafter properly continued to the next ensuing term (Ex parte Margart, 207 Ala. 604, 93 South. 505).

[9] The motion to dismiss the first appeal contains, among other grounds, the averment that it was not taken within 30 days from the date of the rendition of the decree overruling respondents' demurrer to the bill as amended, or, if (the appeal was) attempted to be taken from the final decree of the court (entered on February 16, 1923), it preceded that decree.

The decree overruling demurrer to the bill as amended (not dismissing the bill) was entered on November 30, 1921; the appeal first sought to be taken by giving "security for the costs * * * approved by the clerk or register," was filed and approved on the 27th day of November, 1922, and notice thereof duly given adverse parties on December 13, 1922. As respects this decree overruling demurrer to the bill, the same will not be reviewed by the appeal taken before the rendition of the final decree. It was not taken within 30 days from the date of the rendition of the decree on demurrer. Pepper v. Horn, 197 Ala. 395, 73 South. 46; Nelson v. Cornelius, 208 Ala. 688, 95 South. 170; Bickley v. Hays, 183 Ala. 506, 62 South. 767; Minge v. Smith, 206 Ala. 330, 89 South. 473. See Wadsworth v. Goree, 96 Ala. 227, 10 South. 848; Nelms v. McGraw, 93 Ala. 245, 9 South.

719; Snider v. Funderburk, 209 Ala. 663, 96 South. 928; Boshell v. Phillips, 207 Ala. 628, 93 South. 576; Code, 1907, § 2837.

[10, 11] Had that appeal not been taken under section 2838 and the General Acts of 1915, page 722, by giving first security for costs (November 27, 1922) before final decree, the overruling of such demurrer might be reviewed under the provisions of section 2837 of the Code. Wynn, Adm'r, v. Tallapoosa County Bank, 168 Ala. 469, 483, 53 South. 228. The same effect, however, is not to be obtained (as to the ruling on demurrer), if that appeal, taken November 27, 1922, was thereafter effectively abandoned by appellee before the final decree. The ruling on demurrer, not being reviewable by the first appeal taken more than 30 days after rendition of the decree on demurrer, may not thereafter be made reviewable on final decree, at the election of appellants, by an abandonment of the (first) appeal. Having elected to appeal under section 2838 of the Code, appellants are irrevocably bound thereby as to the review of the ruling on demurrer. Appellee's motion to dismiss the appeal, from the ruling on demurrer, is granted. A contrary decision on the effect of this waiver would give appellants an advantage over appellee. There is analogy in Cartlidge v. Sloan, 124 Ala. 596, 26 South. 918, L. R. A. (N. S.) 1917A, 113.

[12, 13] How has the abandonment of the first appeal affected the right of review of the order or decree overruling respondents' (appellants') motion for a new trial? A general order of continuance does not keep a motion for a new trial or rehearing alive; if the motion is not called to the attention of the court within the term, and is not duly continued, the court may not entertain such motion at a subsequent term against the due objection of the adversary party. Shipp v. Shelton, 193 Ala. 658, 69 South. 102; Ex parte Schoel, 205 Ala. 248, 87 South. 801; Ex parte Margart, 207 Ala. 604, 93 South. 505. However, a proper motion for a new trial or rehearing, made during the term and duly continued to a subsequent term or terms, will affect the time within which an appeal may be taken to this court, or, if heard without objection, will conserve the same purpose. Shipp v. Shelton, supra; Liverpool, etc., Co. v. Lowe, 208 Ala. 12, 93 South. 765; McCord v. Rumsey, 19 Ala. App. 62, 95 South. 268.

In law cases the rule of the circuit court as to motions in arrest of judgments and new trials (Code 1907, p. 1522, § 22, first given place in Code 1886, p. 808, § 22) obtaining before the consolidation of the law and equity courts (Ex parte City Bank & Trust Co., 200 Ala. 440, 76 South. 372), was and is now:

"*Notice of Motion in Arrest and for New Trials; Grounds and Affidavit.*—Reasons in ar-

rest of judgment, and reasons for new trial, and the affidavits in support thereof, if any are relied on, shall be filed with the clerk, and notice thereof be given to the adverse party one day before the argument. If the cause is tried on the last .day of the term, the notice shall be given when the motion is entered. The party making such motion is entitled to the opening and conclusion of the argument. All such motions not acted on or continued by order of the court·are to be considered as discharged of course on the last day of the term."

[14] This was in line with decisions that, where an application for a new trial or rehearing is not rested on section 5371 or section 5372 of the Code of 1907, the term of the court in which the case was tried is the limit within which such motions may be made (Fitzpatrick's Adm'r v. Hill, 9 Ala. 783, in orphans' court); but, if the motion is duly made and continued for the purpose of subsequent consideration, the matter is still subject to the control of the court (Walker v. Hale, 16 Ala. 26, in circuit court; Pratt v. Keils, 28 Ala. 390, in circuit court; Florence, etc., Co. v. Field, 104 Ala. 471, 476, 16 South. 538, in circuit court, and .motion made at same time at which judgment was rendered; Ex parte Highland Ave., etc., Co., 105 Ala. 221, 223, 17 South. 182, in law side of city court, and motion made at term at which the judgment had been rendered; Barron v. Barron, 122 Ala. 194, 25 South. 55, common-law action where motion was made during the term). And in Mt. Vernon Woodbury Mills v. Judges of Fifteenth Circuit, 200 Ala. 168, 75 South. 916, the effect of an adjourned term of the circuit court was considered, and there was a judgment rendered and motion made at such adjourned term.. So, also, there are decisions, in law cases, to the effect that a motion for a new trial, seasonably made, after the expiration of the time when such motions may be made, may not be so amended as to amount to a departure from the original motion. Liverpool, etc., Co. v. Lowe, supra; Sorsby v. Wilkerson, 206 Ala. 190, 89 South. 657; A. C. L. R. Co. v. Burkett, 207 Ala. 344, 92 South. 456. Rehearings in chancery are required to be applied for during the term in which the decree is rendered. Rules and Practice, Chancery Court, No. 81, p. 1553, Code 1907; Ex parte Gresham, 82 Ala. 359, 2 South. 486; Cox v. Brown, 198 Ala. 638, 73 South. 964; Hale v. Kinnaird, 200 Ala. 596, 599, 76 South. 954; Zaner v. Thrower, 203 Ala. 650, 652, 84 South. 820; Engle v. Bronaugh, 208 Ala. 162, 93 South. 868.

We have statutes declaring judgments and decrees to be beyond the control of courts after the expiration of 30 days from rendition (Gen. Acts 1915, p. 707, § 3; Engle v. Bronaugh, 208 Ala. 162, 93 South. 868); rules of practice, in law courts, that all motions not acted on within the term or duly continued by special order be considered as discharged on the last day of the term (rule 22,

circuit court, p. 1522, Code 1907); and rule, in courts of equity, that applications for rehearings be made at the term at which the decree was rendered (chancery rule 81, p. 1553, Code 1907). Such is the declared policy of the law to make a timely end to litigation. And it is declared that thereafter a court has no power to entertain such motions or applications made after the time indicated in the statute and rules. Mt. Vernon Woodbury Mills v. Judges of Fifteenth Circuit, 200 Ala. 168, 75 South. 916; Shipp v. Shelton, 193 Ala. 658, 69 South. 102; Ex parte Highland Ave., etc., Co., 105 Ala. 221, 17 South. 182; Ex parte Humes, Adm'x, 130 Ala. 201, 30 South. 732; Ex parte Payne, 130 Ala. 189, 29 South. 622; Hundley v. Yonge, 69 Ala. 89. And the result is not different by the decisions that a motion for a new trial or rehearing, seasonably made, suspends judgment or decree in the cause, and the same does not become final, for the purposes of an appeal, until the final disposition of such motion by the court. Barron v. Barron, 122 Ala. 194, 207, 25 South. 55; Southern Ry. Co. v. Jones, 143 Ala. 328, 39 South. 118: Gunnells v. State Bank, 18 Ala. 676; Agee & Co. v. Clark, 6 Ala. App. 128, 60 South. 460.

[15, 16] In the instant case (in equity) a jury trial was had as a matter of right, and the verdict rendered at the June term, 1922, in favor of complainant (appellee). No final decree was rendered thereon at such term, nor motion made for a new trial or rehearing within the term. We take judicial knowledge of the fact that the "June term" of said court terminated on June 24; that the ensuing term began on July 10, and continued to the last Saturday before Christmas, 1922; and the next ensuing term began on the first Monday in January, 1923. Riley v. State, 209 Ala. 505, 96 South. 599; Engle v. Bronaugh, 208 Ala. 162, 93 South. 868; Cleveland v. Little Cahaba Coal Co., 205 Ala. 369, 87 South. 567; Clio Banking Co. v. Brock, 204 Ala. 57, 85 South. 297; Gen. Acts 1915, p. 707. It is further indicated by the record that on July 6, 1922, respondents made a motion for a new trial, and, on being called to the attention of the judge who presided at the trial, it was continued to and was heard without objection and submitted for decree on July 22, 1922; and that the court "took and held said motion under consideration" until November 19, 1922, when it was overruled, and respondents duly reserved an exception.

The statute, providing that, after 30 days from the date on which a judgment or decree is rendered, "the court shall lose all power over it, as completely as if the end of the term had been on that day" (Gen. Acts 1915, p. 707; Howard v. Ala. Fuel & Iron Co., 208 Ala. 500, 94 South. 531; Ex parte Margart, 207 Ala. 604, 93 South. 505; A. C. L. R. Co.

v. Burkett, 207 Ala. 344, 92 South. 456), has no application to the instant motion, for the reason that there was no final decree within that term, at which the verdict was returned, preceding the term at which the motion for a new trial was made. The motion in question was not a rehearing, in equity, within the terms of rule 81, Chancery Practice, page 1553 of the Code.

After the first appeal—from ruling on demurrer and on motion for a new trial—the lower court should have suspended action in said cause to await a decision here. This was not done; and a final decree was entered on the verdict of the jury on February 16, 1923, from which the second appeal was sought to be taken by the giving of security for costs, pursuant to the provisions of Gen. Acts 1915, pp. 711, 722.

[17] The verdict of the jury rendered at the June term, 1922, not being duly incorporated into a final decree before the adjournment of the court, the case, as a pending cause, was continued by operation of law, with the expiration of the June term, to the next ensuing term (Greer v. McGehee, 3 Port. 398; Ex parte Driver and Murray, 51 Ala. 41; Ex parte Owens, 52 Ala. 473; Farr v. State, 135 Ala. 71, 33 South. 660; Smith v. State, 149 Ala. 53, 43 South. 129; Ex parte Doak, 188 Ala. 406, 413, 66 South. 64; Wright v. State, 12 Ala. App. 253, 67 South. 798), though the usual general order of continuance of pending causes is not shown by this record to have been entered, as is usually the case (Ex parte Highland Ave., etc., Co., 105 Ala. 221, 223, 17 South. 182; Southern Ry. Co. v. Jones, 143 Ala. 328, 335, 39 South. 118; Ex parte Croom & May, 19 Ala. 561, 576). The same is true as to the adjournment to the January term, 1923, 4 Encyc. Pl. & Pr. 830.

After the hearing on appeal from the ruling on the motion for a new trial (heard without objection on July 22, 1922), further action was had in said cause before that appeal was perfected and decided by this court. Of this the record recites: "Note of testimony and request for submission by complainant," of date December 14, 1922, and "Note of testimony and request for submission by respondents," on January 6, 1923.

That such submission, pursuant to the respective notes of testimony of the parties, was had is shown by the certificate and notation of the clerk and register of the date of January 6, 1923. Gilliland Merc. Co. v. Sinclair, 203 Ala. 62, 82 South. 22; Cooper v. Cooper, ante, p. 13, 97 South. 66, 67.

It should be observed of the complainant's note of testimony that it embraced ruling on demurrer, submission of issues of fact to the jury and verdict thereon, and the judgment of the court overruling motion for a new trial, and on pleadings, proof, and charges of the court indicated; and that the note of testimony of respondents, dated January 6, 1923, was on (1) "several demurrers to the bill of complaint as last amended," the (7) "motion for a new trial as said motion is set out in and made a part of the bill of exceptions," (9) the separate and several "ground of the motion for a new trial," and (16) "the motion for a new trial and to set aside the verdict of the jury and vacate the same, and with which said motion there is submitted the bill of exceptions and transcript of the testimony including the several exceptions to rulings on the evidence during the trial before the jury, together with the grounds on which said rulings were based, and which said evidence and rulings and grounds therefor are set out as they occurred during said trial before the jury in said bill of exceptions and transcript of testimony, and to which reference is hereby expressly made, and the same are made a part hereof as if set out herein, each ruling and exception to be taken and considered separately and severally." This occurred before the return of the first appeal to this court—taken, as we have noted, on November 29, 1922.

In Winn v. Dillard, 60 Ala. 369, it was held that a defendant in chancery, having prayed an appeal from an interlocutory decree overruling demurrer to the bill, and who filed answer and cross-bill before the return of the appeal to this court (a step inconsistent with the pendency of the appeal from the decree overruling the demurrer and not requiring him to answer), by such unnecessary and inconsistent act had waived the appeal. It was stated in that case that such an appeal "will be dismissed on motion." As to waiver or abandonment of an appeal by subsequent unnecessary and inconsistent action on the part of the appellant, see Howison v. Baird, 138 Ala. 129, 35 South. 62; Pepper v. Horn, 197 Ala. 395, 398, 73 South. 46; Cooper v. Cooper, ante, p. 13, 97 South. 66.

[18] It would appear that, where there has been given no supersedeas of the judgment (Cartlidge v. Sloan, 124 Ala. 596, 26 South. 918), the appellant may waive or abandon on appeal where no prejudice will result thereby to the other party. The prejudice that is meant in such case is the loss of some right to which appellee has become entitled by reason of the taking of the appeal by his adversary. L. R. A. (N. S.) 1917A, p. 113 et seq.

[19] It follows that the appeal taken, November 29, 1922, was abandoned by the failure to perfect the same in this court before the voluntary and inconsistent procedure in the lower court, by consent of the respective parties in adverse interest. That inconsistent action or procedure was the submission for final decree, appealed from, that was perfected on May 18, 1923, within the time prescribed by law.

[20] The bill of exceptions was duly pre-

sented on May 15, 1923, within 90 days from that day on which the final decree was rendered—February 16, 1923. Counsel express doubt whether the bill of exceptions should have been presented within 90 days from the rendition of the verdict of the jury, or from the date of rendition of the decree. We understand the effect of the decisions of this court to be, and so announce, that the date referred to in the statute (Code 1907, § 3019), within which the bill of exceptions must be presented, is that on which the formal judgment or decree is rendered, and not the date on which the verdict of the jury is returned into court. Liverpool, etc., Co. v. Lowe, 208 Ala. 12, 93 South. 765; Shipp v. Shelton, 193 Ala. 658, 69 South. 102; Williams v. Goodyear Tire & Rubber Co., 207 Ala. 335, 92 South. 471; Massey v. Pentecost, 206 Ala. 411, 90 South. 866; Sorsby v. Wilkerson, 206 Ala. 190, 89 South. 657; Nat. Pyrites & Copper Co. v. Williams, 206 Ala. 4, 89 South. 291.

The motions to strike the bill of exceptions and to dismiss the appeal from the final decree are overruled.

What is reviewed by the last appeal? It is recited in the bill of exceptions of a resubmission on the motion for a new trial on the submission for final decree:

"At the submission of this case for final decree on the pleadings and proof, and in open court, the respondents resubmitted to the court the motion for a new trial hereinabove in this bill of exceptions set out in support of said motion, and then and there insisted upon said motion. The court thereupon overruled said motion, and to this action of the court in overruling said motion the respondents there and then in open court duly reserved an exception.

"Wherefore, the respondents retender this their bill of exceptions, with the addition thereto next above set out, and pray that the same may be signed and sealed and made a part of the record in this cause, which is accordingly done in term time, and within the time fixed by law on this the 15th day of May, 1923.

"J. C. B. Gwin, Judge Presiding.

"Re-presented this the 15th day of May, 1923.

"J. C. B. Gwin, Judge Presiding.

"Refiled May 18, 1923.

"E. C. Himes, Deputy Clerk."

[21] Chancery rule 81, supra, limits "rehearings of a decree" to the term at which the decree was rendered. The rehearing sought in this case was an order for a new trial to be had before another jury. Such was the result sought to be attained by setting aside the verdict of the jury returned at the June term, 1922. The rules have been applied in equity, as to making such motions (Engle v. Bronaugh, 208 Ala. 162, 93 South. 868) that obtain and have been applied at law, under the recent statute (Massey v. Pentecost, 206 Ala. 411, 90 South. 866). The instant "motion for new trial" or rehearing, not being made at the term within which the verdict was returned, may not thereafter be successfully maintained by the movants and appellants here against the objection of appellee. In the cases of Shipp v. Shelton, 193 Ala. 658, 69 South. 102; Ex parte School, 205 Ala. 248, 87 South. 801; and Ex parte Margart, 207 Ala. 604, 93 South. 505, the motion for new trial or rehearing had been made within the term, and there was a discontinuance by reason of a defective entering of the continuance thereof. Such is not this case, and the motion for rehearing or a new trial came too late, and will not be considered. Engle v. Bronaugh, 208 Ala. 162, 93 South. 868.

The several rulings to which exceptions were reserved on the trial are duly presented by the bill of exceptions, and will be considered in the order followed by counsel in argument. A. T. & N. Ry. Co. v. Aliceville Lumber Co., 199 Ala. 391, 404, 405, 74 South. 441, and authorities. The bill, as amended by a proper party in interest (Bowe v. Pierson, 206 Ala. 250, 89 South. 711; Braasch v. Worthington, 191 Ala. 210, 67 South. 1003, Ann. Cas. 1917C, 903), sufficiently stated the several grounds of contest (Code 1907, §§ 6196, 6207; Barksdale v. Davis, 114 Ala. 623, 627, 22 South. 17; Coghill v. Kennedy, 119 Ala. 641, 656, 24 South. 459; Alexander v. Gibson, 176 Ala. 258, 262, 57 South. 760; Barnett v. Freeman, 197 Ala. 142, 72 South. 395). See, also, Pilcher v. Surles, 202 Ala. 643, 81 South. 585; B. T. & S. Co. v. Cannon, 204 Ala. 336, 341, 85 South. 768.

[22] The certification of the bill of exceptions by the judge who presided at the trial, as prescribed by law for a bill of exceptions, was a sufficient compliance with the provisions of the statute that the judge or chancellor may require the testimony taken orally to be transcribed, etc. Gen. Acts 1915, p. 705. However, the evidence was in the breast of the court as so certified in the bill of exceptions. It was submitted upon by the parties as required by the rules in a chancery case (Brassell v. Brassell, 205 Ala. 201, 87 South. 347; Johnson v. Riddle & Ellis, 204 Ala. 408, 85 South. 701), and was before the court when the decree was rendered upon the verdict of the jury rejecting the probate of Mrs. Martin's will.

[23] Assignments of error not insisted upon are not considered. Georgia Cotton Co. v. Lee, 196 Ala. 599, 604, 72 South. 158; L. & N. R. R. Co. v. Holland, 173 Ala. 675, 694, 55 South. 1001.

The assignments of error are from 1 to 326, inclusive, and we have considered the same in detail, though it will not be necessary to treat separately each assignment. Many charges were requested—given and refused. These are not numbered, and are difficult of reference. We have employed the letters of the alphabet to indicate the given charges of the complainant-contestant; respondents' refused charges are numbered from 1 to 18, inclusive, and their given

charges are indicated as S to Z, and A–1 to L–12, inclusive.

[24-27] Given charge A for complainant conforms to the statement of the law to be found in Coghill v. Kennedy, 119 Ala. 641, 646, 666, 24 South. 459. If fraud or undue influence, on the part of one or more devisees or legatees under the will, affected the whole, will, then no portion thereof can be upheld. Florey's Ex'rs v. Florey, 24 Ala. 241, 248. However, if the evidence shows that the will was in part the effect of undue influence, and in part the "act of the testator's own free will," in such case the will is not wholly void, and the latter part must stand, although the will be annulled as to the former. Henry v. Hall, 106 Ala. 84, 97, 17 South. 187, 54 Am. St. Rep. 22; Goldsmith v. Gates, 205 Ala. 632, 88 South. 861; Councill v. Mayhew, 172 Ala. 295, 312, 55 South. 314; Eastis v. Montgomery, 93 Ala. 293, 299, 9 South. 311; Lyons v. Campbell, 88 Ala. 462, 468, 7 South. 250; Blakey's Heirs v. Blakey's Ex'x, 33 Ala. 611, 616. The charge was free from error. If there had been misleading tendencies as to a partial probate, it should have been duly raised in the lower court (Goldsmith v. Gates, 205 Ala. 632, 88 South. 861) by the evidence and explanatory charge pursuant thereto. The same reasoning justified the giving of charge F at the request of contestant. It was the same as charge 6, dealt with in Keeble v. Underwood, 193 Ala. 582, 593, 69 South. 473. The instant charge F properly referred the "belief" or "determination" of the jury to the evidence.

[28] The giving of charges G, I, and O is challenged. The statements of law contained in said charges are supported by the authorities. Miller v. Whittington, 202 Ala. 406, 410, 80 South. 499; McElhaney v. Jones, 197 Ala. 303, 312, 72 South. 531; Betz v. Lovell, 197 Ala. 239, 249, 72 South. 55; Cunninghame v. Herring, 195 Ala. 469, 472, 70 South. 148; Scarbrough v. Scarbrough, 185 Ala. 468, 64 South. 105; Jones v. Brooks, 184 Ala. 115, 118, 120, 63 South. 978; Mullen v. Johnson, 157 Ala. 262, 47 South. 584; McQueen v. Wilson, 131 Ala. 606, 609, 611, 31 South. 94; Eastis v. Montgomery, 95 Ala. 486, 11 South. 204, 36 Am. St. Rep. 227. The case of Johnson v. Johnson, 206 Ala. 523, 91 South. 260, is in line with the foregoing authorities, and did not militate against the giving of said charges requested by contestant. Coghill v. Kennedy, supra. The contingent interest in Mr. Lewis, after the death of Mattie Crutcher, was not so remote, uncertain, and indefinite as to make the burden of proof, or cast the burden of going forward with the evidence, as stated in said charges, on the other party.

[29] Given charge N is challenged. It was justified in the giving by Brancroft v. Otis, 91 Ala. 279, 284, 288, 8 South. 286, 24 Am. St. Rep. 904; Lockridge v. Brown, 184

Ala. 106, 113, 63 South. 524; Coghill v. Kennedy, 119 Ala. 641, 658, 665, 24 South. 459; Higginbotham v. Higginbotham, 106 Ala. 314, 17 South. 516.

[30] Given charge R was in accord with the announcements contained in Schieffelin v. Schieffelin, 127 Ala. 14, 38, 28 South. 687, discussing a like charge, there numbered 70, using the words "did not have testamentary capacity." This case has not been overruled. The charge does not refer to the jury for decision a mere question of law. Tidwell v. State, 70 Ala. 33; Doe ex dem. Anniston City Land Co. v. Edmondson, 145 Ala. 557, 40 South. 505; Barlow v. Hamilton, 151 Ala. 634, 44 South. 657; Jeffries v. Pitts, 200 Ala. 201, 75 South. 959.

The general charges requested by respondents (proponents) on the several grounds of contest were properly refused. The evidence was sufficient to warrant the submission to the jury. Howell v. Howell (Ala. Sup.) 98 South. 630;[1] McMillan v. Aiken, 205 Ala. 35, 40, 88 South. 135.

[31] The question of undue influence was sought to be eliminated or ignored in the request for refused charge 7, notwithstanding respondents' charge V, that "the burden of proof is on the contestant to reasonably satisfy you by the evidence that the execution of the will in question was procured by undue influence exerted on Mary Lewis Martin." The requested charge was, at least, confusing. There was no error in the refusal.

[32] Charge 8, refused to respondents (proponents), is incomplete; the elements required under said issue are correctly indicated in given charge Z.

[33] Respondents' charge 9 was properly refused. Miller v. Whittington, 202 Ala. 406, 412, 80 South. 499; Higginbotham v. Higginbotham, 106 Ala. 314, 318, 17 South. 516; Councill v. Mayhew, 172 Ala. 295, 55 South. 314.

[34-36] Charge 12 is argumentative, and invades the province of the jury. Charge 13 ignored a ground of contest—that the will was procured by the undue influence charged. The testamentary capacity of testatrix was not the sole issue of fact submitted for the decision of the jury. Charge 15, ignoring the issue of testamentary capacity, was properly refused. These charges (12, 13, and 15) confused the issues being submitted to the jury under the two phases of the evidence.

[37] Charge 18 omits the requirement that the testatrix knew, at the time the will was executed, the manner in which she wished to dispose of her property. Taylor v. Kelly, 31 Ala. 59, 72, 68 Am. Dec. 150; West v. Arrington, 200 Ala. 420, 421, 76 South. 352.

[38] It was error to instruct the jury that they might not find the will was procured by

[1] Post, p. 429.

undue influence unless it "amounted to coercion or *force*." (Italics supplied.) Miller v. Whittington, supra. The use of the word "force" was evidently a misprision for fraud. Mullen v. Johnson, 157 Ala. 262, 272, 47 South. 584; Gaither v. Phillips, 199 Ala. 689, 693, 75 South. 295.

[39-46] There was no error in giving contestant's charges B and N. Gaither v. Phillips, supra. Charges C, K, and L are in accord with announcements contained in Coghill v. Kennedy, 119 Ala. 641, 646, 24 South. 459; Leverett's Heirs v. Carlisle, Ex'r, 19 Ala. 80. Charges D, E, and H are approved in Gaither v. Phillips, 199 Ala. 689, 692, 694, 75 South. 295, and Smith v. Smith, 174 Ala. 205, 56 South. 949. It was not error to give charges P and R—they did not submit a question of law. Schieffelin v. Schieffelin, 127 Ala. 14, 28, 29, 28 South. 687. And charge Q was held not to be error to give in Wear v. Wear, 200 Ala. 345, 348, 76 South. 111.

[47] Charge 11 was properly refused, as being incomplete and confusing. It failed to define the "other things" testatrix was required to know and appreciate in order that she might possess testamentary capacity. In Johnson v. Johnson, 206 Ala. 523, 524, 526, 91 South. 260, 262, this court merely said, of an exception reserved to oral charge:

"The oral charge of the court, in defining mental capacity requisite to make a will and undue influence that avoids a will, employed the phrasing found in many decisions here. The oral charge was not subject to the criticisms taken by appellants."

The charge is not a full statement of what constitutes testamentary capacity. Testatrix must not only have mental capacity "to know the persons to whom she wished to will her property," but to "know and understand the nature and consequences of the business to be performed, and to discern the simple and obvious relation of its elements to each other," and to remember the property she is about to will. West v. Arrington, 200 Ala. 420, 76 South. 352; Councill v. Mayhew, 172 Ala. 295, 55 South. 314; Watkins v. Yeatman, 189 Ala. 370, 66 South. 707; Taylor v. Kelly, 31 Ala. 59, 68 Am. Dec. 150; Knox v. Knox, 95 Ala. 495, 11 South. 125, 36 Am. St. Rep. 235.

[48] Under the evidence there was no error in refusing charges as to partial probate. The testatrix was a wife and mother, dealing with all of her properties, and devising and bequeathing the same to relatives, some of whom were more distant than the relation of husband and child. There was or not a valid disposition, as the case may be, and it was a question of fact for the jury. We are of the opinion that no error was committed.

[49] We might not have considered these charges, since they were numerous and not indicated by numbers or letters to make them of ready access. It was required that we locate the charge from the brief to the assignment of error, then to the page of the transcript. However, we have tried to consider each charge to which specific objection and argument referred. Gibson v. State, 89 Ala. 121, 8 South. 98, 18 Am. St. Rep. 96; Southern Railway Co. v. Cofer, 149 Ala. 565, 43 South. 102; Weaver v. State, 1 Ala. App. 48, 55 South. 956; Montgomery, etc., Co. v. Leeth, 2 Ala. App. 324, 56 South. 770. .

[50] As to the many rulings on evidence, they have all been examined, and it is not deemed necessary to discuss each in detail. Appellants' counsel say:

"John T. Martin, the complainant in this case, was incompetent to testify as a witness, he being interested in the result of the suit, and a general objection was sufficient to raise the point. Walker v. Walker, 34 Ala. 472; McCrary v. Rash, 60 Ala. 374; Poarch v. State (Ala. App.) 95 South. 781."

The last authority cited is by the Court of Appeals, and the question for decision there was whether a proper predicate had been laid for the introduction of a confession of the defendant. And the decisions in Walker v. Walker's Executor, 34 Ala. 469, 472, and McCrary's Adm'r v. Rash's Adm'r, 60 Ala. 374, are not apt, as we shall presently indicate. The general objection to the testimony of John T. Martin was not sufficient to challenge the testimony as detailing a transaction with or statement by the deceased, within the provisions of section 4007 of the Code of 1907. That statute has been recently construed. Kuykendall v. Edmondson, 205 Ala. 265, 87 South. 882; Darrow v. Darrow, 201 Ala. 477, 78 South. 383; Frederick v. Wilbourne, 198 Ala. 137, 73 South. 442; Henry v. Hall, 106 Ala. 84, 17 South. 187, 54 Am. St. Rep. 22; Kumpe v. Coons, 63 Ala. 448; Snider v. Burks, 84 Ala. 53, 57, 4 South. 225. The case of McCrary's Adm'r v. Rash's Adm'r, 60 Ala. 374, an action on a note for the price of slaves, is not in point, and Walker v. Walker's Executor (1859), 34 Ala. 469, has not since been cited on the question before us, for the reason that that decision was announced before the passage of the act of February 14, 1867, p. 435, § 1. This act was first codified as section 2704 of the Revised Code (1867), and was the genesis of section 4007 of the Code of 1907. It follows that John T. Martin was not disqualified as a witness under the statute.

[51] The deputy clerk in a probate office has the authority given by statute. Gen. Acts 1915, p. 549; Hines v. Hines, 203 Ala. 633, 84 South. 712. The entire record of the initial probate of said will was before the court, without objection to the question, though immaterial, "and made in the ab-

sence of the judge himself," which was answered:

"Judge Stiles was not present in court at the very moment it was written; no, sir. I, as chief clerk, representing Judge Stiles, am here at all times, and have the custody of all papers."

The record then further recites this statement of the witness (Sam T. Huey):

"The bench notes were made by Judge Stiles himself, and also the proof of the will and taking of the affidavits of the witnesses; and also the order on the back was made by Judge Stiles. Mrs. Patton is what is designated as the minute clerk in my office."

No reversible error intervened.

[52] Questions as to George Lewis Martin were offered as tending to show the attitude of his mother toward him, and called for relevant testimony. Under section 2 of the will, was this a natural provision to be made for a child, or were the circumstances such as to be given expression by a mother possessing testamentary capacity, or did a vitiating and undue influence intervene in the making of the will? Such inquiries cover a wider field than that of an ordinary litigation. Coghill v. Kennedy, 119 Ala. 660, 663, 664, 24 South. 459; Chandler v. Jost, 96 Ala. 596, 602, 11 South. 636; Kramer v. Weinert, 81 Ala. 414, 1 South. 26; Snodgrass v. Bank, 25 Ala. 161, 174, 60 Am. Dec. 505. See, also, Schieffelin's Case, 127 Ala. 14, 28 South. 687.

[53] The illness of testatrix, and that of her family, the time, nature, and duration thereof, were subjects of inquiry under an issue of testamentary capacity. This evidence tended to show how and to what extent testatrix was affected thereby. Coghill v. Kennedy, 119 Ala. 641, 663, 24 South. 459.

[54] The fact that testatrix did take her own life made pertinent her declarations relative thereto, and her threats to end her existence. Grand Lodge, etc., v. Wieting, 168 Ill. 408, 48 N. E. 59, 61 Am. St. Rep. 123, 126, 127; Karow v. Continental Ins. Co., 57 Wis. 56, 15 N. W. 27, 46 Am. Rep. 17, 18.

[55] The family, social, and business relations of testatrix with her brother, the nature of the trust and confidence she reposed in him, were proper subjects of inquiry.

[56] It was not error to permit complainant to show that, as husband of testatrix, he did not know of the existence of the will until after the death of the wife, and was then informed by his brother-in-law. It was material evidence, with other facts, under the issue of undue influence. Coghill v. Kennedy, supra.

[57] The letter written contestant by testatrix immediately before taking her life, and two or three years after the date of the will, is not remote, when considered with the other evidence, as tending to show her physical and mental condition, and as affording a reasonable inference the jury might draw of the affection she had for him. This evidence was competent as tending to show whether the will was a natural or unnatural disposition of her property, or whether testatrix possessed testamentary capacity at the time the will was executed. Howell v. Howell, post, p. 429, 98 South. 630.

The feeling of resentment of the father (contestant) towards the son was beside the issues, and not permitted to be inquired about. However, the son's conduct and its effect on testatrix was competent.

[58] The rule applied in Gibson v. Gaines, 198 Ala. 583, 73 South. 929, as to the introduction in rebuttal to immaterial evidence of like evidence, does not apply; and the alleged conversation between the father and son about the latter desiring testatrix to let him have the moneys given him "now," and the observations of the father to Mr. W. H. Lewis, at the time, that, if she gave or had left Lewis Martin the amount, "he wouldn't have it 60 days," were immaterial.

The circumstances of the death of Mrs. Martin and her letters in question were for consideration, with the other evidence, as tending or not to show her physical or mental condition when the will was made, and whether or not that condition was such as made her the subject of undue influence on the part of one she had trusted in health, or whether she possessed testamentary capacity.

There was no error in the introduction of the evidence of Dr. Waldrop, Dr. Edmundson, Mrs. Orr, Mrs. Fenwick, Mrs. Allen, Mrs. Marsh, Mrs. Watkins, Mrs. Lockhard, Mrs. Mayer et al. The proper predicates were laid for experts and nonexperts, and the rules of law obtaining as to this need not be repeated. Woodward Iron Co. v. Spencer, 194 Ala. 285, 291, 69 South. 902; Howell v. Howell, post, p. 429, 98 South. 630.

[59] We have examined the several objections to the evidence of Edmundson, Mrs. Mayer, Mrs. Allen, Mrs. Orr, Mrs. Marsh, Mrs. Fenwick et al., and we find no reversible error. What Mrs. Orr testified testatrix stated to her of the interview with her brother about changing the will was pertinent and material under both issues of the contest. Coghill v. Kennedy, 119 Ala. 641, 663, 24 South. 459.

[60, 61] The will bears date of February 11, 1918, and testatrix died December 29, 1921. One of proponents, testifying, was asked by his counsel: "What did Mr. Martin have to say about it (the will) at that time" (which was after the death of testatrix), and was not permitted to answer. There was no error. The rights of the parties were fixed, and such discussion was immaterial to the issue of testamentary capacity

or undue influence. There was no error in overruling proponents' objection to the question, on the cross-examination of Mr. Lewis: "Did you discuss this will with John T. Martin at any time from February, 1918, until Mrs. Martin's death?" and motion to exclude the answer, "Never." It was a slight circumstance elicited by a proper cross-examination, in the nature of an admission against interest, that was not error to have the jury consider under the issue of undue influence and evidence offered in support thereof.

Mr. Lewis, testifying, detailed his business relations with testatrix (made reference to a private transaction had by him with complainant), and said:

"Mr. Martin has testified here about a lot and the sale of it; he placed the lot, located at Wylam, Ala., in my hands for sale, and gave me a price to sell it for; I sold it for him for $150 more than he asked for it, turning the morning [money] over to him less $50, I think it was, that he owed me; he asked me to keep that back, and I took it out; that was money that he had borrowed from me prior to the sale. I did not charge Mr. Martin anything as commission on the sale. No part of that money came into this fund of Mrs. Martin's."

[62, 63] Under the rule declared in Bank of Phœnix City v. Taylor, 196 Ala. 665, 72 South. 264, and Gibson v. Gaines, 198 Ala. 583, 73 South. 929, there was no error in asking Mr. Martin (in rebuttal): "Did Mr. William H. Lewis give you the purchase money for the Wylam lot?" There was no error in admitting in evidence, over respondents' objection, the answer: "He never gave me the money." The bill of exceptions then recites:

"Contestant closes.

"This was all of the testimony in this case.

"Thereupon the respondents offered to introduce in evidence the deposit slips in favor of John T. Martin, on February 14, 1912, showing the amount received for a lot, in Mr. Lewis's handwriting, and we offer in addition thereto Mr. Martin's checks and the account with the bank, showing this account closed out and settled.

"Thereupon the complainant objected to said introduction; the court sustained said objection, and to this action of the court the respondents there and then, in open court, duly reserved an exception."

[64, 65] A careful reading of the testimony of Mr. Martin fails to disclose testimony or a reference to a sale of the lot as stated by Mr. Lewis. In this last ruling on evidence there was no prejudicial error committed. Complainant did not first go into this field of irrelevant evidence. The respondents, having done so by reference, authorized the denial or reply. There must be an end to such immaterial inquiry, and there was no error in declining to permit the prolongation of the same by cumulative evidence afforded by the bank account or deposit slip showing

such deposit to the account of Mr. Martin. Pertinent authorities on this character of evidence are 5 Jones on Ev. (2d Ed.) § 873; Bank of Phœnix City v. Taylor, 196 Ala. 665, 669, 72 South. 264; Gibson v. Gaines, 198 Ala. 583, 590, 73 South. 929; Ala. Fuel & I. Co. v. Bush, 204 Ala. 658, 662, 86 South. 541; F. W. Bromberg & Co. v. Norton, 208 Ala. 117, 119, 93 South. 837. If it be said the inquiry was whether Mr. Martin's moneys were carried into the bank account of the testatrix, the same should not be shown, since the source of title to properties sought to be devised or bequeathed by will is held to be an immaterial inquiry. Howell v. Howell (Ala. Sup.) 98 South. 630;[2] Winston v. Elliott, 169 Ala. 416, 53 South. 750. Moreover, the record recites that the evidence was closed, and this reason would sustain the instant ruling of the court.

[66, 67] Exception was reserved to the whole of the oral charge. That charge, taken as a whole and in connection with the given charges, was free from error to reverse. The court had the right to state generally the respective theories of the parties and issues of fact, under the several grounds of contest and the evidence before the jury. The oral charge, as supplemented by many given charges defining testamentary capacity and undue influence that vitiates a will, was without error. It is insisted that the oral charge was insufficient and submitted questions of law to the jury. Such objection should have been made in the court below, and proper instructions requested to cover the questions of law thought to be necessary or not sufficiently defined or stated to the jury. Such are the rulings of this court, where the oral charge was misleading. T. C. I. & R. R. Co. v. Williamson, 164 Ala. 54, 57, 51 South. 144; Towns v. State, 111 Ala. 1, 5, 20 South. 598.

Finding no error in the record, the decree of the circuit court in equity is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.

On Rehearing.

THOMAS, J. The original opinion is now corrected pursuant to suggestion by counsel that the local statute fixed the term of court for the Bessemer division of the circuit court. Local Acts 1919, p. 62. Washington v. Waldrop, Clerk, 204 Ala. 109, 85 South. 383. When that act is applied to the procedure taken in this case, before and to the time of the first appeal, and the abandonment of that appeal by the parties, the result we have heretofore announced is unchanged. Where the term of the court was terminated by operation of law, pending causes from the 1922 term (where there was

[2] Post, p 429.

no discontinuance recognized by the law [Smith v. State, 149 Ala. 53, 56, 43 South. 129]) were continued, without a general or special order to that effect, to the succeeding term. We have heretofore indicated that there was no discontinuance of this case before final decree for the failure of orders of continuance or for the failure to enter judgment on the verdict during the 1922 term of said circuit court.

The date of the judgment on the verdict of the jury in a case like that before us was not the subject of A., T. & N. Ry. Co. v. Aliceville Lbr. Co., 199 Ala. 391, 398, 399, 403, 408, 74 South. 441, a damage suit for wrongful destruction of property by fire, and it was not declared by that opinion to be required of entry as of the date of rendition of the verdict of the jury. In the case of Ex parte Colvert, 188 Ala. 650, 65 South. 964, the question of time when the decree must be entered or bear date was not considered; the question of application for a "new trial," required to be directed to the chancellor, was passed upon. This, of necessity, would require time to intervene, after the verdict and before formal decree. In Lanier v. Russell, 74 Ala. 364, a contest of the probate of a will before a jury, the declaration was made that "a judgment, following a verdict, takes effect as of the day the verdict was rendered; *unless there is something in the record showing it was not pronounced on that day.*" (Italics supplied.) And in Lanier v. Richardson, 72 Ala. 134, the application was for mandamus in matter of entry of judgment on verdict establishing the will; and it was there held that "the judgment necessarily follows the verdict, as in an action at law; and the verdict being rendered on Saturday morning, while the court is in session, the judgment is properly entered and dated as of that day, although the entry was not actually made until 10 o'clock at night, after the expiration of office hours." The opinions in the last two cases were written by Judge Stone, and, apparently, in the same controversy, or branch thereof. His expression in the last opinion (Lanier v. Russell, 74 Ala. 364, 368) was that the judgment "*takes effect* as of the day the verdict was rendered, unless there is something in the record showing it [the decree or judgment] was not *pronounced* on that day"—meaning the day on which the jury returned the verdict. (Italics supplied.) The date of the final decree was that of its rendition, February 16, 1923.

There was appearance in this court, on submission of the case, by all necessary parties. L. & N. R. Co. v. Shikle, 206 Ala. 494, 90 South. 900. Appellants' counsel point to the fact that the guardian ad litem for the minor respondents assigned error in this court, and "joined in briefs and original submission in this case." This action was with the other appellants, W. H. Lewis et al., except the respondent George Lewis Martin. The latter duly appeared by counsel at the submission of the case in this court, and assigned no error. The assignments of error for the other respondents in the court below contained, among others, this assignment:

"(326) The trial court erred in rendering the final decree in the absence of a note of testimony as to the two minors, David L. Rosenau, Jr., and Margaret Rosenau."

Our attention is not called to any assignment of error challenging the regularity of the proceeding in the lower court as to respondent George Lewis Martin's failure to submit on a note of testimony, or the lack of any pleadings as to him.

The record contains no request for submission for final decree or note of testimony for the said minors or George Lewis Martin. However, there was ample evidence to support the decree pursuant to the verdict of the jury, and of this due submission was made by the other parties, respectively, and note of testimony thereof by the complainant and the respondents—other than the minors and George Lewis Martin. In the cases cited (Lundy v. Jones, 204 Ala. 326, 85 South. 411; Brassell v. Brassell, 205 Ala. 201, 87 South. 347; Milam-Morgan Co. v. State, 205 Ala. 315, 87 South. 348; Blackburn v. Moore, 206 Ala. 335, 89 South. 745) there was no note of testimony as required by chancery rule 75, p. 1551, Code 1907. Hence there was no evidence before the court to support or to authorize the respective decrees in said cases. In Potts v. Court of Commissioners, 203 Ala. 300, 82 South. 550, the effect of the note of testimony required by the rule was indicated—to limit the consideration to evidence so noted. See, also, Mason v. American Mortgage Co., 124 Ala. 347, 26 South. 900. No reversible error intervened on the submission for final decree on notes of testimony indicated.

[68] We have re-examined the entire evidence given by Mrs. Marsh and Mrs. Fenwick, objections reserved thereto, and motions to exclude, and find that no reversible error was committed by the court in permitting these witnesses to give an opinion as to the sanity or insanity of testatrix. Woodward Iron Co. v. Spencer, 194 Ala. 285, 289, 69 South. 902.

The question of competency to answer the questions indicated rested upon the sound discretion of the court. Wear v. Wear, 200 Ala. 345, 76 South. 111; Johnson v. Johnson, 206 Ala. 523, 91 South. 260. The exercise of this "sound discretion" by the court will not be revised, unless it "clearly appears to have been erroneous." Parrish v. State, 139 Ala. 16, 42, 36 South. 1012.

It was not our intention, in the opinion rendered, to convey the idea that exceptions were not duly taken to the several portions of the oral charge, and as specifically indi-

cated in the bill of exceptions. We have again considered said exceptions, and, when the oral charge is considered as a whole and in connection with the many given charges, there was no reversible error in the oral charge, and the jury were sufficiently instructed.

The application for rehearing is overruled.

Overruled.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.